[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1119
Pursuant to section 13a-73 (b) of the Connecticut General status the Commissioner of Transportation on April 9, 1997 filed a certificate of taking on property owned by Joseph F. Wilusz et. ux. in the town of Canton, Connecticut. The taking was for the relocation of Powder Mill Road and an unsafe bridge in said town of Canton. The property consists of 27,340.00 square feet more or less, on the easterly side of Powder Mill Road and the north side of the Nepaug River.
The Commissioner also filed on the same day a certificate of taking of property owned by Towpath Associates consisting of 17,160.00 square feet on the opposite side of Nepaug River. This taking was for the same purpose as that of the Wilusz property. Each parcel contained abutments formerly connected to a railroad bridge spanning the Nepaug River. The Commissioner assessed damages of $1,575.00 in the Wilusz case and $1,175.00 in the Towpath case. Both Towpath and Wilusz appealed the assessment.
The case was referred to a referee and the two matters were tried in succession. After a hearing the Court found that "the highest and best use of the subject properties is their use in the manner proposed by the takings for the relocation and realignment of Powder Mill Road and the replacement of its unsafe and abandoned bridge, or a similar use bridging the Nepaug River, utilizing the existing abutments and building a roadway for transportation or recreational purposes over and incorporating the abandoned railroad track bed existing on the properties". The Commissioner appealed the decision and in March 2000 the Supreme Court inCommissioner of Transportation vs. Towpath Associates., Commissioner ofTransportation vs. Joseph F. Wilusz et al., 255 Conn. 529 (2001) ordered new trials in both matters stating in part that there was insufficient evidence to support the lower court's decision. It held that the trial court's determination that the highest and best use of the properties, whether separately or together, was as a bridge site for which they were specially adapted, did not have adequate support in the record but was speculative in nature because the evidence in the record did not adequately support a reasonable probability that but for the taking the properties would have been used either individually or together for their purported highest and best use as a bridge site.
In addition to the above the Supreme Court stated "from the record before us in these cases we cannot conclude that the trial court properly determined that it was reasonably probable that someone other than the Department would have assembled these properties in the near future to construct a bridge thereon. The trial court in this case failed to address the reasonable probability that, but for the taking of the CT Page 1120 defendants' property, a prudent investor would have obtained, in thereasonable near future, both parcels in order to pursue a bridge project". The Court further stated. "Thus, we agree with the Department that the trial court's findings with respect to the special adaptability of the properties for a bridge project, based on the evidence presented, were "remote and speculative Possibilities, rather than reasonableprobabilities".
At a second trial before this Court the Plaintiff's offered two arguments. The first was that there was a reasonable probability that the abutments would be used together for a bridge for community use.
In the opinion of this Court the Plaintiffs in these cases, Towpath and Wilusz, were unable to show that there was a reasonable probability that these properties would be put together by some owner other than the department of transportation and be used for any other purpose than that which the Department of Transportation (DOT) had planned to use it. All the evidence offered by the plaintiffs was, in the opinion of this court, speculative. The appraiser simply elaborated on the testimony he gave in the first trial to the extent that the town or some of the private organizations that are interested in nature might conceivably decide to build a bridge in the same location. Mr. Marsele, the Plaintiffs' appraiser, indicated that the highest and best use of the premises would be the utilization of the existing abutments for a bridge. He testified that the property has value to the community as a bridge for a nature walkway or a bicycle path along the picturesque river land. He testified that he had investigated the uses to which former railroad and trolley bridges with old abutments had been used, other than for public roadways. He cited three examples; one in Shelburne Falls, Massachusetts where a bridge was rebuilt to create a "Bridge of Flowers". The second example was in Northampton, Massachusetts where a bridge was restored for a nature trail along the Connecticut River and a third example was the Farmington Valley Greenway and Farmington River Trail. Here two bridges, one in the town of East Granby crossing the Salmon Brook and the second across the Farmington River, were rebuilt for walking, jogging, biking, rollerblading and other activities.
Having heard the parties the Court is of the opinion that the evidence of plaintiffs' appraiser was nothing more than speculative. It does not appear to this Court that there was any reasonable probability that the land would be used by any other than the State within a reasonable time and that the evidence of other bridges being used in other locations is too remote and speculative to have any legitimate effect upon the evaluation of the land at the time of taking.
There was no evidence offered that there was any plan or movement or CT Page 1121 expression of interest in such a project as building a bridge at the site of the abutments. It would seem more logical that rebuilding the old bridge would be a more likely project than using the railroad abutments.
As pointed out by the Commissioner in his brief, the Court after the first trial in the Towpath case assessed damages at $1,175.00 which was more than the plaintiffs' claimed land value and $1,575.00 in the Wilusz case which was $775.00 more than the plaintiffs' claimed land value. In the words of the Commissioner, there is no dispute between the defendant and the plaintiff's regarding the value of the land acquired by the Commissioner.
The second ground upon which the Plaintiffs base their argument is the "exception" to the general rule that loss to the owner from the taking, not value to the condemnor, is the measure of damages.
In Gray Line Bus Company v. Greater Bridgeport Transit District,188 Conn. 417, 449 (1982) at page 427 the Connecticut Supreme Court states "We would approve a deviation from that principle, as did the New York Courts, in a situation where its application produced an unfair result. The fundamental objective is to award "just compensation" and valuation standards must bend to this basic policy."
It is notable that the Court in Towpath, supra, at page 555 left open for a new trial consideration "as an initial proposition, and without deciding its propriety, whether the Defendants are entitled to some compensation for the abutments under the possible exception to the general rule to which we referred in dictum in Gray Line Bus Co. v.Greater Bridgeport Transit District, supra, 188 Conn. 417-28 ("we would approve a deviation from [the general rule] . . . in a situation where its application produced an unfair result").
In Towpath the Court addressed the doctrine of "assemblage" which applies when the highest and best use of separate parcels of land involves their integrated use with lands of another. The Court stated, "we recognize, however, [T]he fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value . . . There must be a reasonable [probability] that the owner could use this tract together with the other [parcels for such] purposes or that another could acquire all lands or easements necessary for that use" citations omitted. "(The assemblage approach permits a property owner to introduce evidence in a condemnation proceeding that the fair market value of its land is enhanced by its probable assemblage with other parcels . . .)." CT Page 1122
In footnote no. 13 page 549 the Court discusses the question of unity of ownership without deciding whether a unity of ownership is essential to the doctrine of assemblage.
This Court believes unity of ownership is not essential and adopts the view of those courts that hold that unity of ownership of both lands is not necessary so long as an integrated use is within the realm of reasonable probability. The view of the court in Clavmar Realty Co. v.Redevelopment Authority, 129 Wis.2d 92-93 stating "that the traditional application of assemblage, which does not contain [the] limitations . . . better serves the overriding purpose of determining "just compensation" for owners of condemned land, because it permits property owners to establish a legitimate element of the fair market value of the property, i.e. its value in conjunction with the adjacent land to which the owner may or may not hold title") is reasonable.
In the opinion of this Court the Plaintiffs have shown by sufficient evidence that there is a reasonable probability that the parcels in question, if used, would be used in conjunction in attaining their highest and best use which is a bridge. The abutments had been connected in the past. They are in fact being used to erect a bridge and although the Court feels that the potential uses cited by Mr. Marsele are remote it is notable that in the view of an experienced appraiser their value would be as a bridge.
All parties agree that a condemnor is bound to pay fair market value for a parcel of land. Likewise it is bound to add to that value the value of a usable building on that parcel. The same would be true if a foundation of an unfinished but usable building exists on the land. Its value must be added to the above land. It would seem to the Court that anything usable existing on the land that had been built there by man would have to be included in valuing the parcel and that would include these non-made usable abutments.
A contractor planning to develop the two parcel in question by using the abutments to connect the parcels would expect to pay for the abutments. Why shouldn't the State?
To allow the State to acquire usable abutments which reduces its costs substantially in building this bridge without paying just compensation to the owners is, in the opinion of the Court, unfair and a windfall to the the State and justifies an exception to the general rule and an award to the condemnees.
The difficulty arises in deciding how to value the windfall. CT Page 1123
"The question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good a condition pecuniarily by just compensation as he would have been had the property not been taken.Colaluca vs. Ives, 150 Conn. 521, 530 (1963).
The Plaintiffs used the cost of constructing new abutments as being the equivalent of the replacement value, and therefore the value of the abutments as of the date of taking. These figures are, of course, only estimates.
Due to the discovery of rubble behind the retaining walls which caused its removal and construction of a cement wall and use of about two-thirds of the original estimate of pilings, the actual saving to the state was less than expected.
In the opinion of the Court we are realistically valuing the windfall to the State.
Setting this value is a matter of equity since we are dealing with the concept of unfair treatment to the owners and fair treatment to the condemnee. The fairest way to approach the value in this case, since the information is available, is to take the engineer's estimate as to the original saving to the State (the replacement cost of the abutments) and deduct the value of the unforseen additional work and arrive at the actual value to the State.
The Court has based its evaluation of the windfall to the State on the detailed figures of Mr. Buck appearing on Plaintiffs' Exhibit 6, the photographs in Defendant's Exhibits D and E and its own observations in viewing the location of the sites and is of the opinion that the fair value for the windfall to the State is $70,000.00; $35,000.00 for each abutment.
Accordingly, judgment may enter for Joseph F. Wilusz et al in the amount of $35,000.00 plus the undisputed value of the land of $1,575.00 for a total of $36,575.00 plus an appraisal fee of $100.00 and costs.
Judgments may also enter for Towpath Associates in the amount of $35,000.00 plus the undisputed value of the land of $1,175.00 for a total of $36,175.00 plus an appraisal fee of $100.00 and costs.
____________________ Hale, J.T.R. CT Page 1124