BEMBINSTER, Appellant, v. STATE OF WISCONSIN (Department of Transportation, Division of Highways), Respondent.

*No. 307. Argued January 3, 1973.—Decided February 8, 1973.*
(Also reported in 203 N. W. 2d 897.)

For the appellant there were briefs by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *W. Thomas Terwilliger* of counsel, all of Wausau, and oral argument by *Herbert Terwilliger.*

For the respondent there was a brief by *Crooks, Low & Earl* of Wausau, and oral argument by *Patrick L. Crooks.*

HALLOWS, C. J. Mrs. Bembinster owned approximately 46.92 acres of land in Marathon county west of the city of Wausau. The land was situated south of Highway 29 and west of Highway 51 bypass. Part of this land was needed by the state for an interchange at the junction of Highways 29 and 51. The land was divided by the Chicago & North Western Railway right-of-way, which ran approximately east and west. Approximately 39.18 acres lay north of the tracks and 7.74 to the south. After the taking by the respondent state of Wisconsin on December 23, 1968, there was left 8.85 acres north of the tracks and two parcels consisting of 1.7 and 5.27 acres south of the railroad tracks. The land had been zoned for interchange manufacturing.

In 1962 Florence Bembinster leased the land to Aero Auto Parts, Inc. (Aero) for three years at an annual rental of $5,200. The lease contained options to renew for two successive three-year periods. The first option was exercised; the second was not because of the pendency of the taking. On the day of the taking the land was occupied by Aero, which was a Wisconsin corporation operating an automobile salvage business thereon. The corporation had stored approximately 2,000 junk trucks and autos on the premises. The president of the corporation was George Bembinster; the secretary-treasurer and chief executive officer was Edward Bembinster, the husband of the appellant, who was a stockholder. Aero filed with the state of Wisconsin (highway commission) a claim for realignment of the personalty in the sum of

$55,669 pursuant to sec. 32.19 (2), Stats. 1967.[1] This claim was based on the ground Aero was a tenant under a three-year lease and was required to move its stock of autos and trucks off the premises as a result of the taking.

During the trial this claim was admitted in evidence and the state was allowed to argue to the jury that the value of the property before the taking should be reduced by the amount of the claim. This argument was based upon the further argument that Aero, Mrs. Bembinster and her husband were all one and the same entity and therefore the cost of removing the property was properly chargeable to Mrs. Bembinster. It is claimed it was prejudicial error to admit this evidence, and we agree.

Much evidence was adduced concerning the lease, its options, the officers of the tenant corporation, and the alleged agency of the husband of Mrs. Bembinster, all to the point of sustaining a conclusion that Aero as a tenant was fictitious and the corporate veil should be pierced. In our view, the evidence adduced did not prove the tenant was the *alter ego* or the agent of Mrs. Bembinster. We find no reason for disregarding the corporate entity. There was neither fraud nor any strong equitable claim demanding such action. *Milwaukee Toy Co. v. Industrial Comm.* (1931), 203 Wis. 493, 234 N. W. 748; *Minahan v. Timm* (1933), 210 Wis. 689, 247 N. W. 321; *R. B. General Trucking v. Auto Parts & Service* (1958), 3 Wis. 2d 91, 87 N. W. 2d 863; *Marlin Electric Co. v. Industrial Comm.* (1967), 33 Wis. 2d 651, 148 N. W. 2d 74. The evidence was no more unusual than in most situations

---

[1] "32.19 Additional items payable. . . .

"(2) REMOVAL OF PERSONAL PROPERTY TO ANOTHER SITE. The cost of removal from the property taken to another site of personal property of land owners, or tenants under an existing unexpired written lease, the full term of which is at least 3 years. Such costs shall not exceed $150 for removals from each family residential unit or $2,000 from each farm or nonresidential site."

involving recognized family corporations. *See Button v. Hoffman* (1884), 61 Wis. 20, 20 N. W. 667; *Petersen v. Elholm* (1906), 130 Wis. 1, 109 N. W. 76; *Lipman v. Manger* (1924), 185 Wis. 63, 200 N. W. 663; *Oeland v. Woldenberg* (1925), 185 Wis. 510, 201 N. W. 807.

The question of whether the tenancy was one for three years, month-to-month, or at will is relevant only to the issue of whether a tenant qualifies for realignment benefits under sec. 32.19, Stats., which requires a three-year lease. Whether a tenant qualifies under this section or not, in the absence of a contract to the contrary, a tenant generally is required to return the property upon termination of the tenancy in the same condition as he received it, ordinary wear and tear excepted. 49 Am. Jur. 2d, *Landlord and Tenant,* pp. 913, 914, sec. 939. Consequently, it was the duty of Aero to restore the land by removing its autos and trucks. This cost of removal was not properly chargeable to Mrs. Bembinster, the owner. Whether the claim was valid under sec. 32.19 is not before us. But valid or not, the attorney for the state was erroneously allowed to argue from this evidence that the value of the land before taking, as testified to by the witnesses for Mrs. Bembinster, should be reduced by the amount of the claim.

The testimony relating to the value of the land disclosed widely varying opinions. Mr. Sternberg, a witness for Mrs. Bembinster, testified to a before value of $385,212 and an after value of $19,035. Mr. Chrouser, also a Bembinster witness, testified to a before value of $438,454 and an after value of $37,130. The state's witness Mr. Anderson testified to a before value of $212,500 and an after value of $49,500. Mr. Faust, another state witness, testified to a before value of $176,000 and an after value of $41,000. Mr. Faust's value results in a taking value exactly in the amount of the jurisdictional offer, which value both the commissioners and the jury

rejected. What is puzzling to this court is how four appraisers, if they were impartial and competent in ascertaining value of land, could differ so widely in their judgments.

The state argues the jury probably followed the testimony of Mr. Anderson because it found a before value of $227,000 and an after value of $45,870, and consequently, the error was harmless. While the result is close, we cannot assume the jury therefore disregarded the argument and testimony concerning the claim of Aero. The fact is the jury determined a value considerably less than that attributed to the land by the commissioners. We think the admission of the realignment claim was prejudicial and Mrs. Bembinster is entitled to a reversal and a new trial.

Because two other questions raised are likely to again appear at the new trial, we will briefly discuss them. The first concerns the questioning of two witnesses as to the probability of the town's laying out a road to provide access to the parcel north of the railroad tracks. Admissibility and the weight to be given evidence should always be distinguished. Evidence should be admitted unless it has little or no probative value or serves only as a basis for speculation. While possibilities of factors affecting value may be speculative, probabilities are not. Just compensation in condemnation proceedings is measured by what a willing buyer would pay for the land taking into account the probability of an access road or of a change in zoning or of other factors affecting the value of property. *See Almota Farmers Elevator & Warehouse Co. v. United States* (1973), 409 U. S. 470, 93 Sup. Ct. 971, 35 L. Ed. 2d 1. The probability of the town's exercising its discretion to construct[2] such a road is for the jury to evaluate in determining value.

[2] *See* sec. 80.13 (1), Stats.; *Backhausen v. Mayer* (1931), 204 Wis. 286, 289, 234 N. W. 904; *Larsen v. Town Supervisors* (1958), 5 Wis. 2d 240, 92 N. W. 2d 859.

This is not speculation by the jury but an evaluation of what a willing buyer would do in making a judgment as to value. The evidence that Mrs. Bembinster would be required to pay for the benefits of such a road goes not to admissibility but to the weight of the evidence.

Zoning changes and sanitary facilities are elements of value and are factors to be admitted in evidence concerning value when the evidence is in proper form. The question here is whether the form of proof submitted was acceptable to prove these factors. The court refused to admit opinion testimony of the chairman of the town zoning board and of a member of the town board to the effect that had an application for zoning change been made, it probably would have been granted. Likewise, the court excluded similar testimony of a member of the sanitary district, to the effect that had application been made, the property probably would have been added to the district.

It is well established that market value in an eminent-domain proceeding is to be based not necessarily on the use to which the property was being put by its owner at the time of taking but rather on the basis of the highest and best use, present or prospective, for which it is adapted and to which it might in reason be applied. 4 Nichols, *Eminent Domain*, p. 12–189, sec. 12.314; *see also: Utech v. Milwaukee* (1960), 9 Wis. 2d 352, 101 N. W. 2d 57; *Carazalla v. State* (1955), 269 Wis. 593, 70 N. W. 2d 208, vacated, 71 N. W. 2d 276; *Muscoda Bridge Co. v. Grant County* (1929), 200 Wis. 185, 227 N. W. 863; *Munkwitz v. Chicago, Milwaukee & St. Paul Ry. Co.* (1885), 64 Wis. 403, 25 N. W. 438. Where a zoning ordinance prohibits the most advantageous use of the property, the landowner may show there is a reasonable probability of rezoning so as to allow for the highest use.

"Where the enactment of the zoning restriction is not predicated upon the inherent evil of the proscribed use . . . and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value." 4 Nichols, *Eminent Domain*, p. 12–394, sec. 12.322 [1].

The question of how a landowner may meet his burden of showing the probability of such rezoning is the question now facing this court.

In *Hietpas v. State* (1964), 24 Wis. 2d 650, 130 N. W. 2d 248, we stated a reasonable probability that a zoning restriction may in the near future be repealed or amended so as to permit a greater use cannot be proved by an opinion based upon a possibility or an assumption. Nor can the probability of change in legislation be proved by the opinion of board members or legislators. The reason as generally stated is that the process involves prognostication of future legislative action, which may be speculation if not based upon facts justifying a probability. *See* 4 Nichols, *Eminent Domain*, p. 12–415, sec. 12.322 [2]; *Cartwright v. Sharpe* (1968), 40 Wis. 2d 494, 162 N. W. 2d 5; *Northern Trust Co. v. Snyder* (1902), 113 Wis. 516, 89 N. W. 460 (legislator's opinion on what the legislature would have done if faced with a particular fact situation not admissible); but *see Department of Public Works & Buildings v. Rogers* (1966), 78 Ill. App. 2d 141, 223 N. E. 2d 177 (opinion of city corporation counsel who handled all city zoning ordinance variances and drafted the ordinance involved was inadmissible to prove probability of zoning change). The type of evidence which has been admitted as material as tending to prove a reasonable probability of change in-

cludes the granting of many variances which showed a continuing trend that will render rezoning probable, the actual amendment of the ordinance subsequent to the taking, and an ordinance rezoning neighboring property. *See* 4 Nichols, *Eminent Domain,* pp. 12–414 to 12–419, sec. 12.322 [2]. Opinions based upon such facts are also admissible. There was no error in excluding the opinion testimony.

*By the Court.*—Judgment reversed, and a new trial granted.