CLARMAR REALTY CO., INC., Plaintiff-
Respondent-Petitioner,

v.

REDEVELOPMENT AUTHORITY OF the CITY
OF MILWAUKEE, Defendant-Appellant.

Supreme Court

*No. 84–1085. Argued October 28, 1985.—Decided April 2,
1986.*

(Also reported in 383 N.W.2d 890.)

For the plaintiff-respondent-petitioner there were briefs by *Stephen T. Jacobs, Anne Willis Reed, Jerome M. Janzer* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.,* Milwaukee, and oral argument by *Mr. Jacobs.*

For the defendant-appellant the cause was argued by *Charles R. Theis,* assistant city attorney, with whom on the brief was *Grant F. Langley,* city attorney.

BABLITCH, J.  We review an unpublished decision of the court of appeals filed on April 9, 1985, reversing the judgment of the circuit court for Milwaukee county, Judge Thomas J. Doherty, presiding.

Clarmar Realty Co., Inc., (Clarmar) appeals, arguing that in a condemnation proceeding the fair market value of a truck terminal which it owns should be the value of the terminal in an integrated use with an adjacent parcel of land owned by another, less the cost of acquiring that parcel. The circuit court accepted this argument, ordering the Redevelopment Authority of

the City of Milwaukee (Authority) to compensate Clarmar on this basis. The court of appeals reversed.

■

We hold that a court may determine the fair market value of a condemned parcel of land in combination with the land of another in a prospective, integrated use if: 1) the prospective use is the "most advantageous use" of the condemned land; 2) the "most advantageous use" of the land can be achieved only through combination with another parcel or parcels; 3) combination with another parcel or parcels is "reasonably probable;" and 4) the prospective, integrated use is not speculative or remote. Because we conclude the circuit court appropriately determined the fair market value of the condemned parcel of land in this case, we reverse the court of appeals and reinstate the judgment of the circuit court.

The issues for review are: 1) where the "most advantageous" use of a condemned parcel of land involves its prospective, integrated use with the land of another, may a court consider that prospective, integrated use in determining the fair market value of the condemned parcel; and 2) if so, did the circuit court correctly determine the fair market value of the condemned parcel in this case?

On April 22, 1983, the Authority condemned Clarmar's truck terminal, land and supporting buildings. When the Authority and Clarmar disagreed on the amount of compensation due, the Authority submitted to Clarmar a jurisdictional offer to purchase in the amount of $164,600. Clarmar provisionally accepted that amount, but appealed to the circuit court for additional compensation.

At trial the key issue was the fair market value of Clarmar's terminal on the date of its condemnation. On that date the terminal had 22 docking doors, 9 on the east and 13 on the north and west sides. The nine doors facing east were 58 feet from the line separating Clarmar's property from an adjacent parcel of land, which the Authority had condemned in 1981. All 22 doors were adapted to perpendicular docking by long and short trucks, but long trucks, which require more space to maneuver into a perpendicular position, could dock at the east doors only by first crossing onto the adjacent parcel to turn. According to testimony of Clarmar's president, the owner of the adjacent parcel had permitted trucks to use a 25 foot strip of his parcel as a turning area for a number of years.

Finding that the evidence supported Clarmar's claim that the value of its terminal was enhanced by the likelihood that a buyer would assemble its parcel with a strip of the adjacent parcel in order to obtain full use of the terminal, the circuit court awarded Clarmar $48,800. Its award represented the difference between the value of the terminal in full use ($228,800), less the cost of acquiring the other parcel ($15,400) and the Authority's jurisdictional offer ($164,600). It also awarded Clarmar interest, attorneys' fees and other litigation costs.

The Authority appealed. The court of appeals held that a court may, in an appropriate case, consider a prospective, integrated use of a condemned parcel with the land of another in determining the fair market value of the parcel, but concluded that this was not an appropriate case to do so. Clarmar appealed the decision and we granted its petition for review.

*Issue 1: Where the "most advantageous" use of a condemned parcel of land involves its prospective, integrated use with the land of another, may a court consider that prospective, integrated use in determining the fair market value of the condemned parcel?*

Clarmar urges this court to adopt an approach to valuation known as the "doctrine of assemblage." As Clarmar construes this approach to valuation, it permits valuation of a parcel of land at condemnation according to a use of the land which requires integration with other parcels when two conditions are met: the integrated use is the "most advantageous" use of the property and the integration of the parcel with another parcel is "reasonably probable." According to Clarmar, this approach does not permit valuation for a speculative use, which it defines as a use which a reasonable buyer would not consider when determining fair market value.

The Authority concedes that evidence of assemblage may enhance the value of a parcel of land when the evidence shows a "reasonable probability" that a buyer would combine a condemned parcel with another parcel in an integrated use and therefore would be willing to pay a greater price for it. The Authority also concedes that its present ownership of the parcel adjacent to Clarmar's terminal does not preclude the assemblage approach to valuation. It argues, however, that in this case the court applied the assemblage approach incorrectly by setting the value of Clarmar's parcel as though it included part of the adjacent parcel and as though that added land were used for a truck turning area, rather than by merely determining how the probability of future combination of the parcels enhanced the fair market value of the land Clarmar

owned. According to the Authority, the circuit court's approach impermissibly inflated the value of Clarmar's terminal.

This court must decide questions of law independently without deference to the decisions of the trial court or the court of appeals. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W. 2d 389 (1984). Accordingly, we review the decision of the court of appeals in order to determine whether a court may consider the combination of a condemned parcel with another parcel for a prospective, integrated use in order to determine the fair market value of the condemned parcel.

Traditionally, the doctrine of assemblage has been defined as follows: "[w]here the highest and best use of separate parcels involves their integrated use with the lands of another, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable." 4 Sackman, *Nichols on Eminent Domain* 12.3142(1), pp. 12–329 (3d ed. 1978).

The assemblage approach permits a property owner to introduce evidence in a condemnation proceeding that the fair market value of its land is enhanced by its probable assemblage with other parcels. Generally, in jurisdictions which allow consideration of assemblage, the courts admit such evidence if combination with other parcels for a more profitable use is reasonably likely, whether or not the owner of the condemned property holds the other parcels. *See United Gas Pipe Line Co. v. Becnel,* 417 So. 2d 1198 (La. App. 1982); *Cain v. City of Topeka,* 603 P. 2d 1031 (Kan. App.

1979); *State v. Long,* 344 So. 2d 754 (Ala. 1977); and *City of Indianapolis, Dept. of Met. Dev. v. Heeter,* 355 N.E. 2d 429 (Ind. App. 1976). Specifically, these courts admit such evidence if a prospective, integrated use is the "highest and best use" of the land, can be achieved only through combination with other parcels of land, and combination of the parcels is "reasonably probable". *United Gas Pipe Line Co.* at 1202; *Cain* at 1033; *Long* at 759; and *City of Indianapolis* at 434. Furthermore, these courts will not consider evidence of a prospective, integrated use which is speculative or remote. *United Gas Pipe Line Co.* at 1203; *Cain* at 1033; and *Long* at 760. For example, in *Long* the Alabama court reviewed a probate court's award of damages and compensation for the condemnation of 96 acres of land for highway use. The court approved the admission of testimony that the condemned land, which had an unspecified current use, formed a prime industrial site in combination with other parcels. *Id.* It stated that the fact that the adjacent property was held by another did not of itself make combined use of the parcels speculative. Without expressly adopting the doctrine of assemblage, it concluded that a "reasonable possibility" of combination with another parcel for a more profitable use was a circumstance which could affect the market value of the condemned land. *Id.* at 759.

There is support for allowing a court to consider evidence of assemblage in condemnation proceedings in federal constitutional law and in prior standards set by this court.

Under the fifth and fourteenth amendments to the United States Constitution, a state may not appropriate private property for a public use through the power of eminent domain unless it pays the owner of the prop-

erty a "full and exact equivalent" for the property. *Olson v. United States,* 292 U.S. 246, 254–55 (1934). In *Olson* the Supreme Court addressed the question whether the "full and exact equivalent," or fair market value, of a condemned parcel of land could be enhanced by the possibility of its more profitable use in combination with other parcels. It wrote:

> "Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. . . . *The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value.*" (Citations omitted.) (Emphasis added.) *Id.* at 255–56.

Federal constitutional law also requires that the value of condemned property be set without reference to the effects of condemnation on market conditions. Interpreting the fifth amendment in *Almota Farmers Elevator & Whse. Co. v. U.S.,* 409 U.S. 470 (1973), the Supreme Court stated that the constitutional requirement for "just compensation" in a condemnation proceeding is met by payment of what a willing, private buyer would pay for the property. *Almota* at 474. The

Court also stated that the government may not condemn lands in such a manner that the position of the owner is worse than it was prior to the condemnation. *Id.* at 478. In *Almota* it held that the federal government could not reduce the compensation due the owner of a condemned leasehold and its improvements on grounds that condemnation had ended the renewability of the lease and the utility of the improvements. *Id.*

In accord with federal requirements, sec. 32.09, Stats., governs the determination of "just compensation" in eminent domain proceedings in this state. It requires that "[i]n determining just compensation the property sought to be condemned shall be considered on the basis of its most advantageous use but only such use as actually affects the present market value." Section 32.09(2). The term "most advantageous" use as it appears in this section is synonymous with "highest and best" use as it appears in statements of the assemblage approach in other jurisdictions.

This court has clarified the statutory requirement of compensation on the basis of the "most advantageous" use by stating:

> " 'Any use to which it is reasonable to infer from the evidence that the land may be put to in the near future, or within a reasonable time, may properly be considered; and compensation may be awarded upon the basis of its most advantageous use. But the future uses considered must be so reasonably probable as to affect the present market value. Imaginary or speculative uses or value must be disregarded.' " *Carazalla v. State,* 269 Wis. 593, 598, 70 N.W. 208 (1955).

In *Carazalla* we held that a court could admit testimony of expert witnesses who considered the potential

commercial value of a farm in determining its fair market value at condemnation, even though the land was not in commercial use, if commercial use were "reasonably probable." *Id.* at 598. At the same time, we emphasized our long-standing prohibition against determining the value of land based on "remote and future" events. *Id.* at 598–99.

Similarly, in a later condemnation case, we stated that the determination of market value may include consideration of prospective land uses which are "reasonably probable." *Bembinster v. State,* 57 Wis. 2d 277, 283, 203 N.W. 2d 897 (1973). In *Bembinster* we held that a court could admit evidence of the "reasonable probability" of rezoning which would end restrictions on the use of a parcel of land and thus permit a more profitable use. *Id.* at 283.

More recently, we stated that "(e)very element which affects value and which would influence a prudent purchaser should be considered" in the valuation of property at condemnation. *Herro v. Dept. of Natural Resources,* 67 Wis. 2d 407, 420, 227 N.W. 2d 456 (1975). In *Herro* we held that a court could admit evidence concerning the likelihood that privately-imposed restrictions on the use of a parcel of land could be removed. *Id.* We concluded that the possibility of removing restrictions presented a question of fact regarding how a willing purchaser would value the land. *Id.*

Our approach to valuation of condemned land since *Carazalla* closely parallels the standards for compensation enunciated by the Supreme Court in *Olson.* Like the federal standards, our standards have permitted admission of evidence of prospective land uses in condemnation cases under three conditions: 1) if the

prospective use is the "most advantageous" use of a condemned parcel; 2) if the prospective use is "reasonably probable;" and 3) if the prospective use is not imaginary or speculative. *Carazalla* at 598.

The assemblage doctrine permits consideration of evidence of a prospective use that requires integration of the condemned parcel with another parcel if integration of the lands is "reasonably probable." In essence, the doctrine expands our second condition to include prospective uses that require combination of lands, while it preserves the limitation that the prospective event affecting land value be "reasonably probable."

We conclude that allowing a court to consider a prospective, integrated use with the land of another in determining the fair market value of a parcel is consistent with our standards for valuation of condemned land and adapts them to settings in which potential assemblage of lands, as a matter of fact, does affect the fair market value of the land. Accordingly, we hold that a court may determine the fair market value of a condemned parcel of land in combination with the land or lands of another in a prospective, integrated use if: 1) the prospective, integrated use is the "most advantageous" use of the condemned land; 2) the "most advantageous" use can be achieved only through combination with another parcel or parcels; 3) combination with another parcel or parcels is "reasonably probable;" and 4) the prospective, integrated use is not speculative or remote.

We note that some jurisdictions limit the consideration of assemblage to settings in which the owner of the condemned parcel also owns the land to be assembled. *See:* 8 ALR 4th 1202 (1981). However, we conclude that the traditional application of assemblage, which

does not contain this limitation, better serves the overriding purpose of determining "just compensation" for owners of condemned land, because it permits property owners to establish a legitimate element of the fair market value of the property, i.e., its value in conjunction with adjacent land to which the owners may or may not hold title.

The facts in this case raised a related issue which the court of appeals addressed, namely whether the Authority's present ownership of the adjacent land (brought about by its prior condemnation) prevented consideration of assemblage.

█

As a matter of federal constitutional law, "just compensation" of an owner of condemned land must include compensation for the ". . . highest and most profitable use for which the property is adaptable . . .," even if that use requires combination of the land with another parcel. *Olson* at 255–56. Moreover, the United States Supreme Court has made clear that the government may not condemn land in such a manner that condemnation itself worsens the owner's position in the market. *Almota* at 478. It stated ". . . it would be unjust to allow the Government to use 'salami tactics' to reduce the amount of one property owner's compensation by first acquiring an adjoining piece of property. . . ." *Almota* at 480. (Powell and Douglas, J. concurring). We agree with this reasoning. Consequently, we conclude, as the Authority concedes, that the unavailability of the adjacent parcel for assemblage due to its prior condemnation by the Authority cannot be dispositive of whether assemblage is "reasonably probable."

*Issue 2: Did the circuit court correctly determine the fair market value of the condemned parcel in this case?*

We now review the circuit court's determination of the fair market value of the condemned parcel in view of its consideration of evidence of assemblage. Our review involves a mixed question of law and fact. When a court's legal conclusions are closely intertwined with its factual findings, an appellate court must separate the conclusions of law from the factual findings and apply the appropriate standard of review to each. Ordinarily an appellate court will uphold the circuit court's factual determinations unless they are clearly erroneous. Section 805.17(2), Stats.

In this case the circuit court correctly analyzed the legal issues before it. The record indicates that the circuit court determined, first, that the "most advantageous" use of Clarmar's property was as a terminal for both long and short trucks. Second, it determined that full use of the terminal could only be achieved through combination of Clarmar's parcel with a portion of the adjacent parcel, which the Authority did not directly dispute. Third, it determined that the combination of the terminal with a portion of the adjacent parcel for use as a turning area was "reasonably probable." It stated:

> "My view is that it is reasonably probable on the basis that it was in fact—that land was being used by . . . [owners of the terminal] at one other time without, as I say, without any apparant (sic) violating of the function of that adjoining land.
> "The impression is, frankly, the land wasn't being used for any significant purpose by Mr. Eisenberg who was the owner at that time, and I do not consider it unrealistic to—an invalid assumption to conclude that, as a reasonable probability, the land

could be purchased. And the question is for how much."

Fourth, the court determined that the prospective use of the land was not speculative. Finally, the court did not consider that the prior condemnation of the adjacent parcel ended the probability of this combination. From these determinations, we conclude that the circuit court correctly considered the evidence of assemblage.

We turn now to the circuit court's factual determinations that assemblage was "reasonably probable" and that the value of Clarmar's terminal was $213,400. We emphasize that Clarmar and the Authority agreed that the "most advantageous" use of Clarmar's property was as a truck terminal. There was therefore no need for a factual finding on the "most advantageous" use of the property. In addition, because the Authority did not directly dispute that full use of the terminal could only be achieved by combining the parcels, there was no need for a finding on whether its "most advantageous" use could only be achieved through combination. Therefore, the questions before the court were whether it was "reasonably probable" that a buyer would try to assemble the parcels in order to have a turning area for long trucks and whether this use was speculative or remote.

Clarmar's president testified that the need for a turning area on the east side had been accommodated for some years by an informal, uncompensated arrangement between Clarmar and the previous owner of the adjacent land. According to his testimony, three quarters of the trucks using the terminal were local haul trucks less than 35 feet long and the remaining trucks were long trucks. He also testified that, al-

though Clarmar had not used the east doors between 1978 and 1981, due to a general downturn in the trucking business, by 1983 business in the industry had improved to a point where Clarmar could use all of its doors.

Land appraisers presented by Clarmar and the Authority and a city tax assessor agreed that the accepted method for ascertaining the value of a truck terminal is the "income method." Using the income method, an appraiser assigns a value to each docking door and then multiplies that value by the number of doors. Accordingly, the total valuations offered by the expert witnesses varied in terms of their per door valuations. Clarmar's expert initially set the value per door at $10,800, the Authority's expert at $10,000, and the city assessor at $10,400.

Clarmar's appraiser testified that he believed that a buyer of the terminal would consider the possibility of purchasing a strip of the adjacent parcel for a turning area. In setting a price for the property, he testified that a buyer would reduce the value of the terminal by the cost of buying that additional parcel. He further testified that a buyer would probably have to pay as much as twice the normal market value of the adjacent strip because its owner would extract a premium based on the buyer's special need for the parcel. Adjusting his per door value to $10,400, Clarmar's appraiser valued the condemned property at $213,400, by multiplying 22 doors times $10,400 and then subtracting the cost of the adjacent strip of land, which he estimated at $15,400.

The Authority's expert, on the other hand, testified that the east doors of the terminal were not useable. According to this witness, the east doors had not

been fully used since 1981. He stated that he had considered only use by long trucks in determining whether the doors were useable, although he also testified that short trucks could use the doors. After adding $1,000 per door to the value of the 13 useable doors to give some value to the partial useability of the east doors, he valued the property at $143,000.

A city tax assessor testified that his 1982 assessment of Clarmar's property set its fair market value at $227,700. The assessor stated that he had made no adjustment for any restrictions on use of the east doors.

There was no testimony in this case that a buyer would prefer to achieve full use of the east doors, and thus full use of the terminal, by scheduling all long trucks to dock at the other doors. Clarmar's president testified that such scheduling was difficult and the Authority did not refute that evidence. There was no testimony that a buyer would prefer to adjust the price downward to reflect the 25 percent loss of docking capacity of the east doors if no turning area were available to long trucks. Further, there was no testimony that an owner of the adjacent land other than the Authority would reject an offer of twice its value, while there was testimony by Clarmar's president that a prior owner had had no other use for that part of the parcel and had not objected to Clarmar's use of the adjacent strip.

Based on this evidence, the circuit court concluded that it was "reasonably probable" that a buyer would combine Clarmar's land with a portion of the adjacent parcel. It further concluded that a combined use of these parcels, which would permit continuation of Clarmar's present use of its terminal, was not speculative or remote. Finally, it determined that the value

of Clarmar's land in integration with the adjacent parcel, after subtraction of the cost of acquiring that parcel, was $213,400.

Arguing on appeal that the approach of the circuit court impermissibly inflated the value of Clarmar's land, the Authority analogizes the facts in this case to a hypothetical setting. In the Authority's hypothetical example, an owner of a parcel worth $10,000, which is adjacent to another parcel worth $10,000, claims $20,000 as the market value of its parcel. The owner bases it valuation on grounds that in an integrated use the parcels have a fair market value of $30,000; since its cost of acquiring the adjacent land is $10,000, it claims the balance as the value of its land. Clearly the approach in the Authority's analogy would overcompensate the owner of the first parcel by $5,000. However, that analogy disregards the correction for such a false increase in value made by the circuit court in this case. Here the court determined that the cost of acquiring a portion of the adjacent parcel was $15,400, a figure which doubled its fair market value to reflect the premium a seller could require in these circumstances. By including that premium in its calculations to represent the enhancement of the value of the second parcel, which also arises from the integrated use, the circuit court corrected for the artificial inflation of the value of the first parcel which occurs in the Authority's analogy.

Findings of fact made by a circuit court will be affirmed unless they are clearly erroneous. *See,* D. Walther, P. Grove, M. Heffernan, *Appellate Practice and Procedure in Wisconsin,* sec. 3.5a (1986). We conclude

from this record that the findings of the court are not clearly erroneous.

For these reasons, we hold that the circuit court properly considered assemblage in valuing Clarmar's terminal under sec. 32.09, Stats., and that it correctly determined the fair market value of the condemned parcel in this case. Accordingly, we reverse the decision of the court of appeals and reinstate the judgment of the circuit court.

*By the Court.*—Decision of the court of appeals is reversed and the judgment of the circuit court is reinstated.