MARKMAN, J.
(dissenting). The majority concludes that evidence of a posttaking rezoning is inadmissible to demonstrate that a “reasonable possibility” of rezoning *167 existed on the date of the taking.[1] I respectfully disagree. Because I believe that evidence of a posttaking rezoning is admissible to demonstrate that a “reasonable possibility” of rezoning existed on the date of the taking, I do not believe that the trial court abused its discretion in admitting such evidence. However, I do believe that the trial court abused its discretion in prohibiting plaintiff from introducing evidence that the posttaking rezoning was caused by the taking. Therefore, I would vacate the decision of the Court of Appeals and remand this case for a new trial, in which defendants would be allowed to introduce evidence of the posttaking rezoning and plaintiff would be allowed to introduce evidence that such posttaking rezoning was caused by the taking.
I. FACTS AND PROCEDURAL HISTORY
Defendant partnership, a partnership that develops real estate, owned 335 acres of vacant property in Novi.[2] In 1995, the Michigan Department of Transportation (MDOT) began proceedings to condemn fifty-one acres of defendants’ property for use in the construction of the M-5 Haggerty Road Connector in Novi. On the date of the taking, the property was zoned for residential use, but in 1998 the property was rezoned for commercial use. At trial, at which the jury was charged with determining the “just compensation” due defendants, *168 the trial court allowed defendants to present evidence of the posttaking rezoning.[3] However, the trial court refused to allow MDOT to introduce rebuttal evidence that the property was rezoned only as a result of the taking. Defendants requested approximately $18.5 million in compensation and MDOT agreed to pay approximately $2.7 million. The jury returned a verdict of approximately $14.8 million. In a split decision, the Court of Appeals affirmed in part, reversed in part, and remanded for a new trial. Unpublished opinion per curiam, issued July 22, 2003 (Docket Nos. 234099 and 240227). The majority held that the trial court abused its discretion in admitting evidence of the posttaking rezoning, and, thus, remanded for a new trial. The dissenting judge concluded that the trial court did not abuse its discretion either in admitting evidence of the posttaking rezoning or in excluding evidence that the posttaking rezoning was caused by the taking, and, thus, he would have affirmed the verdict.
II. ANALYSIS
Art 10, § 2 of Michigan’s 1963 Constitution provides that “[pjrivate property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law.” “ ‘ “The purpose of just compensation is to put property owners in as good a position as they would have been had their property not been taken from them.” ’ ” Dep’t of Transportation v VanElslander, 460 Mich 127, 129; 594 NW2d 841 (1999) (citations omitted). Therefore, “the proper amount of compensation for property takes into account all factors relevant to market value.” Silver Creek Drain Dist v Extrusions Div, Inc, 468 Mich 367, 379; 663 NW2d 436 (2003). In order to determine *169 “just compensation,” we must determine the market “value of the condemned land at the time of the taking.. .State Hwy Comm’r v Eilender, 362 Mich 697, 699; 108 NW2d 755 (1961). The fair market value of condemned property “shall be determined with respect to the condition of the property and the state of the market on the date of valuation.” MCL 213.70(3). “ ‘[A]ny evidence that would tend to affect the market value of the property as of the date of condemnation is relevant.’ ” VanElslander, supra at 130 (citation omitted).
A. RELEVANCE OF EVIDENCE OF POSTTAKING REZONING
It is well established and uncontested that one of the factors relevant to market value is the “ ‘reasonable possibility that the zoning classification will be changed.’ ” Eilender, supra at 699 (citation omitted). As this Court held in Eilender, supra at 699, “ ‘if there is a reasonable possibility that the zoning classification will be changed, this possibility should be considered in arriving at the proper value.’ ” (Citation omitted.)[4] In other words, if, at the time of the taking, there existed a “reasonable possibility” that the property would be rezoned to allow “more lucrative uses,” this “reasonable possibility” should be considered.[5] Id. This factor “ ‘must be considered in terms of the extent to which the “possibility” would have affected the price which a *170 .willing buyer would have offered for the property just prior to the taking.’ ” Id. (citation omitted). Property that is zoned to allow “more lucrative uses” is worth more money than property that is not so zoned. Therefore, property that has a “reasonable possibility” of being rezoned to allow “more lucrative uses” is worth more money than property that does not have a “reasonable possibility” of being rezoned to allow “more lucrative uses.”[6] A person whose property has been taken by the government is entitled to the full market value of the taken property, taking into consideration the totality of factors that a willing buyer would consider, including the “reasonable possibility” of rezoning.
The majority does not disagree that the “reasonable possibility” of rezoning is a factor that must be considered when determining “just compensation.” However, the majority concludes that the fact itself that the property was rezoned after the taking cannot be considered in determining whether there was, at the time of the taking, a “reasonable possibility” of rezoning. I disagree. Instead, I believe that such evidence may afford compelling evidence that a “reasonable possibility” of rezoning existed at the time of the taking.
In this case, one of the primary issues for the jury to resolve was whether, at the time of the taking, there was a “reasonable possibility” that the subject property would be rezoned from residential to commercial. MDOT argues that the trial court abused its discretion when it allowed defendants to introduce evidence that, although the property was zoned residential at the time of the taking, 2V2 years later the property was rezoned *171 commercial. The Court of Appeals majority agreed with MDOT, concluding that “evidence of the actual zoning change was irrelevant to the value of the property on the date of taking and should not have been disclosed to the jury.” Slip op at 3.
The Court of Appeals dissent, on the other hand, concluded that the trial court did not abuse its discretion in admitting evidence of the posttaking rezoning. I agree with this dissent. MRE 402 provides that “[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court.”[7] MRE 401 defines relevant evidence as that “having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”
As already discussed, whether a “reasonable possibility” of rezoning existed at the time of the taking is of consequence to the determination of “just compensation.”[8] That the property was, in fact, rezoned makes it *172 “more probable” that a “reasonable possibility” of rezoning existed at the time of the taking. As the Court of Appeals dissent explained, “evidence of the actual rezoning had the tendency to make the existence of the possibility of rezoning more probable than it would be without the evidence.” Slip op at 2. This is true because a jury confronted with the reality of a subsequent rezoning would be acting in an altogether logical fashion by comparing this reality to an alternative reality in which no subsequent rezoning had occurred, and concluding that the former reality gives rise to a greater inference than the latter that the impetus for rezoning preceded the taking. Whether this inference is strong or weak would depend on the totality of the circumstances.
The majority, however, would, in every case, deny the property owner the ability to introduce evidence of an actual rezoning, regardless of the strength of the inference raised by the rezoning either by itself or in conjunction with other evidence. Because I believe that evidence of actual rezoning gives rise to the wholly logical inference that the genesis of that rezoning may have preceded the taking, I would not bar the introduction of such evidence.[9] Indeed, the leading treatise on eminent domain observes that evidence of a posttaking rezoning “has been held to be weighty evidence of the existence (at the time of the taking) of the fact that *173 there was a reasonable probability of an imminent change.” 4 Nichols, Eminent Domain (3d ed), § 12C.03[3]. As the New Jersey Supreme Court has explained, such evidence “support[s] the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influenced by the probability of an amendment in the near future in fixing the selling price.” New Jersey v Gorga, 26 NJ 113, 118; 138 A2d 833 (1958).[10]
*174 B. MARKETPLACE TRANSACTIONS VERSUS CONDEMNATION PROCESS
As the majority explains, the jury is charged in cases of this sort with determining what a “mythical,” “hypothetical,” “theoretical,” “fictional,” “willing” buyer, would have paid a “mythical,” “hypothetical,” “theoretical,” “fictional,” “willing” seller for the property in a “voluntary,” transaction at the time of the taking. Ante at 137, 138, 142, 143 n 38, and 145; ante at 160. However, in truth, the condemnation process does not involve a typical willing buyer,[11] a willing seller, or a voluntary transaction.[12] Instead, it involves a transaction in which the government takes property without the permission or consent of the property owner, in what is essentially a “forced sale.” The property owner is not a willing seller, and the government is not a typical willing buyer. The condemnation process bears little in common with a voluntary sale of property in the market between a willing seller and a willing buyer.
It is a source of its confusion that the majority fails to give significance to these differences. Yet, they are determinative of the very issue before this Court. The majority provides that the jury is to “suppose” that the property owner is indistinguishable from a willing seller, that the government is indistinguishable from a typical willing buyer, and that both have entered into a market transaction. Next, the jury is asked to “imagine” the value that a “reasonable” buyer and seller *175 would have placed on the property in the market. Finally, although the jury can be apprised by the governmental “buyer” that at the time of “sale,” the property was zoned residential and there was no “reasonable possibility” of it being rezoned, the jury cannot be apprised by the private “seller” that such rezoning, in fact, has already occurred. The upshot of this procedure is that the jury must “imagine” a typical willing buyer, a willing seller, and a voluntary transaction— none of which, of course, exist in reality — while at the same time the jury must not consider a reality that does exist, namely, that the government has taken property that has been rezoned.
Moreover, not only is the jury to “imagine” a market transaction where in reality there is none, but in calculating the “fair market value” of the property being “sold” the jury must imagine a particular moment in time at which the taking, or “forced sale,” occurred, placing itself in the shoes not of any real parties involved in the taking, but of a nonexistent “reasonable” buyer and seller. This is in further contrast to a genuine market transaction in which the buyer and the seller stand in their own shoes, and there is no need for a jury, or any other third party, to imagine anything concerning the value of property.
What is the significance of the fact that the condemnation process is not truly equivalent to a market transaction? Its significance lies in its demonstration that the majority operates on a faulty premise when it insists that the jury, in making its “fair market value” determination, can have access only to such information as would have been possessed by a “real” buyer and seller at the time of the “real” transaction. In the instant case, this means, according to the majority, that the jury must be deprived of the information that the *176 property was rezoned after it was taken. Apart from the fact that all of the majority’s “realities” are merely fictive, there is simply no basis for the proposition that parties to a genuine transaction and parties to a constructive transaction can, or should, be placed on an equal footing concerning the range of access to information. This is a false equivalency because the underlying transactions are not equivalent.
In the market transaction, the buyer and the seller will typically possess considerable information that is distinctive or unique to themselves — sentimental considerations concerning property, subjective assessments of value, and estimations of worth that are a function of their personal experiences, their varied speculations of the future, and their diverse financial circumstances and ambitions. Such “subjective” factors are inaccessible to the jury, which can only make a “fair market value” determination on the basis of “objective” factors.[13] Just as the participants in the “subjective” transaction may then possess information that is un *177 available to the participants in the “objective” transaction, the corollary is also true. For the participants in the “subjective” transaction are involved in the task of calculating “personal value,” while the participants in the “objective” transaction are involved in the very different task of calculating “fair market value.” In calculating the former amount as accurately as possible —“personal value” — it is necessary merely that the buyer and the seller be permitted to take into consideration as much information as is of importance to each. In calculating the latter amount as accurately as possible — “fair market value” — it is necessary in contrast that as much relevant information as available concerning value be taken into consideration.
For the reasons set forth earlier, I believe that evidence of posttaking rezoning is relevant to “fair market value.” Such relevance is not diminished by the fact that this information might not have been available to participants in a “subjective” transaction. Although the “objective” transaction of the condemnation process can never truly replicate the “subjective” transaction of the marketplace, it can nonetheless be made as perfect as possible on its own terms. This can be achieved only by making available as much relevant information as possible to the fact-finder.
c. probative value versus danger of unfair prejudice
MDOT argues that, even if evidence of the posttaking rezoning is relevant evidence, it should be excluded pursuant to MRE 403. MRE 403 provides, “[although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” *178 However, “[e]vidence is not inadmissible simply because it is prejudicial.” Waknin v Chamberlain, 467 Mich 329, 334; 653 NW2d 176 (2002). “ '“Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403 Id. at 334 (citations omitted). “Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury.” Id. at 334 n 3, quoting People v Crawford, 458 Mich 376, 398; 582 NW2d 785 (1998). “The fact that, subsequent to the taking, the zoning ordinance was actually amended to permit the previously proscribed use has been held to be weighty evidence of the existence (at the time of the taking) of the fact that there was a reasonable probability of an imminent change.” 4 Nichols, Eminent Domain (3d ed), § 12C.03[3] (emphasis added). Evidence of a posttaking rezoning “is not merely marginally probative evidence, and thus there is no danger that marginally probative evidence will be given undue weight by the jury.” Waknin, supra at 335 (emphasis added). Further, the trial court repeatedly instructed the jury that it was to value the property as of the date of the taking,[14] and we *179 must presume that the jurors understood and followed these instructions.[15] People v Dennis, 464 Mich 567, 581; 628 NW2d 502 (2001).
D. PRACTICAL VALUE OF EVIDENCE OF POSTTAKING REZONING
At trial, MDOT argued that there was no “reasonable possibility” that the property would be rezoned. Not permitting defendants to respond to this argument with the fact that the property has, in fact, been rezoned undermines the integrity of the judicial process by *180 requiring a jury to ignore reality. That is, the majority would require the jury to ignore the skyscraper that looms over a property, or the crowds milling about the new sports stadium. Such a determined obliviousness to reality brings no honor to a justice system when there are customary and traditional means — a trial court that precisely instructs on the law and a jury that faithfully abides by the instructions — by which to ensure that the skyscraper or the sports stadium is evaluated only for proper purposes. The majority is correct that evidence of a posttaking rezoning is not dispositive concerning whether there existed at the time of the taking a “reasonable possibility” of a rezoning. However, it is incorrect that such rezoning can never be of any relevance in this regard. Rather, just as with all other aspects of the “just compensation” determination, the relevance of a particular posttaking rezoning must be assessed on a case-by-case basis.
The premise of our justice system is that providing more, rather than less, information will generally assist the jury in discovering the truth. Relevant evidence sustains the truth-seeking process. “In the American judicial system, a jury is called upon to assume the important role of fact-finder and the massive responsibility that the role entails: searching for the truth. ‘The purpose of trial is to find the truth and exact justice through the transmission of information to the jury.’ ” Comment, Speaking out: Is Texas inhibiting the search for truth by prohibiting juror questioning of witnesses in criminal cases?, 32 Tex Tech L R 1013, 1014 (2001) (citation omitted). The costs to our justice system are almost always much greater, in my judgment, when the jury is deprived of relevant evidence than when the consideration of such evidence is enabled and a risk incurred that it will be considered for improper pur *181 poses. For we can reasonably protect against the latter risk through careful instructions and thoughtful deliberations. By contrast, lost evidence will forever taint a decision that could have been enhanced by the consideration of such evidence. While recognizing that posttaking rezoning evidence can be abused, such evidence also carries the potential to ensure a truer and better-informed calculation of fair market value. To deprive the jury in this case of the ability to consider the rezoning is to undermine its ability to determine the truth in this matter, and thereby to produce the most accurate possible determination of “just compensation” to which defendants are constitutionally entitled.[16]
Finally, knowing that a jury will be apprised of all relevant information also may serve felicitously to encourage those who testify and who argue before the jury to do so in a more accurate and precise fashion. For example, a government witness may be more hesitant to tell the jury that there was no “reasonable possibility” of a rezoning if the witness knows that the jury will eventually be informed that the property has, in fact, been rezoned. In other words, a government witness may well be less cocksure in his or her assertion that there was no “reasonable possibility” of a rezoning if there is a real-world check upon the witness’s testimony. Under the majority’s approach, the government will remain free to tell the jury that absolutely no *182 possibility of a rezoning existed, and the property owner will be unable to rebut this assertion by being allowed to inform the jury that the property has, in fact, been rezoned.[17] To allow such a distorted picture of the reality surrounding the exercise of a constitutional power, to the benefit of the government and to the detriment of the property owner, is to undermine the integrity of the constitutional process.[18]
*183 For these reasons, I conclude that the trial court did not abuse its discretion in admitting evidence of the posttaking rezoning.[19]
E. EVIDENCE THAT POSTTAKING REZONING WAS CAUSED BY TAKING
A posttaking rezoning is admissible only as evidence that a “reasonable possibility” of a rezoning existed at the time of the taking.[20] A rezoning that was caused by *184 the taking obviously does not constitute evidence that a “reasonable possibility” of a rezoning existed at the time of the taking. In other words, a posttaking rezoning that was caused by the taking is simply not relevant evidence in support of fair market value at the time of the taking. Therefore, “[t]he effect on market value of the condemnation proceeding itself may not be considered as an element of value.” Silver Creek, supra at 379 n 13, citing MCL 213.70(1),[21] and In re Urban Renewal, Elmwood Park Project, 376 Mich 311, 318; 136 NW2d 896 (1965). “[A]n actual change in zoning cannot be taken into account if it ‘results from the fact that the project which is the basis for the taking was impending.’ ” Roach v Newton Redevelopment Auth, 381 Mass 135, 137; 407 NE2d 1251 (1980), quoting 4 Nichols, Eminent Domain (rev 3d ed), § 12.322[1], n 7.1. See also State v Kruger, 77 Wash 2d 105, 108; 459 P2d 648 (1969); People ex rel Dep’t of Pub Works v Arthofer, 245 Cal App 2d 454, 465; 54 Cal Rptr 878 (1966); Williams v City & Co of Denver, 147 Colo 195, 202; 363 P2d 171 (1961). The trial court itself recognized that, if the posttaking rezoning was caused by the taking, the jury should not consider the posttaking rezoning when considering whether a “reasonable possibility” of a rezon *185 ing existed at the time of the taking, as it instructed the jury: “if there was a reasonable possibility, absent the threat of this condemnation case, that the zoning classification would have been changed, you should consider this possibility in arriving at the value of the property on the date of taking.” (Emphasis added.) However, the trial court, for reasons that are unclear, refused to allow MDOT to present evidence that the posttaking rezoning may have been a result of the taking.[22]
The Court of Appeals dissent relied on MCL 213.73 to conclude that the trial court did not abuse its discretion in excluding evidence that the posttaking rezoning was caused by the taking.[23] MCL 213.73 provides, in pertinent part:
*186 (1) Enhancement in value of the remainder of a parcel... shall be considered in determining compensation for the taking.
(2) When enhancement in value is to be considered in determining compensation, the agency shall set forth in the complaint the fact that enhancement benefits are claimed and describe the construction proposed to be made which will create the enhancement.
The dissent concluded that because MDOT “did not plead in its complaint any benefit to defendants’ remaining property as a result of its construction project,” the trial court did not abuse its discretion “when it prevented [MDOT] from presenting evidence that the rezoning occurred as a result of its construction project. . . .” Slip op at 4. I respectfully disagree. MCL 213.73 is applicable where the condemning agency attempts to reduce the amount of “just compensation” on the basis that the condemnation actually increased the value of the remaining property that was not condemned. MDOT attempted to introduce evidence here that the rezoning was the result of the condemnation, not to show that defendants’ remaining property was enhanced by the condemnation, but to show that when the taking occurred there was not a “reasonable possibility” of a rezoning. In other words, MDOT did not contend that it should pay less for the fifty-one acres taken because the remaining 284 acres will be worth more than before the taking. MDOT does not contend that “enhancement in value is to be considered in determining compensation.” MCL 213.73. To the contrary, MDOT is arguing that enhancement in value, i.e., the subsequent rezoning, is not to be considered in determining compensation. Therefore, in my judgment, MCL 213.73 simply does not apply here.
*187 III. CONCLUSION
Because I believe that evidence of a posttaking rezoning is admissible to demonstrate that a “reasonable possibility” of rezoning existed on the date of the taking, I do not believe that the trial court abused its discretion in admitting such evidence. However, I do believe that the trial court abused its discretion in prohibiting plaintiff from introducing evidence that the posttaking rezoning was caused by the taking. Therefore, I would vacate the decision of the Court of Appeals and remand this case for a new trial, in which defendants would be allowed to introduce evidence of the posttaking rezoning and plaintiff would be allowed to introduce evidence that this posttaking rezoning was the result of the taking.

 Throughout this opinion, I use the term “majority” when referring to both Justice Young’s lead opinion and Justice Kelly’s concurring opinion, and I use the term “plurality” when referring only to Justice Young’s lead opinion.

 According to defendants, they purchased this property to build a high technology office park, anticipating that the property would be rezoned from residential to commercial. After the taking, the property was rezoned from residential to commercial and defendants did build an office park on their remaining 284 acres.

 At MDOT’s request, the jury saw the property in its posttaking state.

 Justice Kelly states that I am mischaracterizing this Court’s holding in Eilender. I cite Eilender only for a proposition with which everybody apparently agrees — a “reasonable possibility” of rezoning should be considered when determining “just compensation.” I do not suggest that this Court in Eilender already answered the question at issue here.

 The opposite, of course, is true as well. That is, if, at the time of the taking, there existed a “reasonable possibility” that the property would be rezoned to exclude “more lucrative uses,” this “reasonable possibility” should also be considered. Id.

 As the plurality recognizes, “at the time defendants acquired their Novi property, beginning in 1988, the property was more valuable in their eyes because of the looming possibility of a future zoning change.” Ante at 140.

 MDOT does not argue that the admission of the posttaking rezoning violated the Constitution of the United States or the Constitution of the state of Michigan. It only argues that the evidence is not relevant and that, even if it is relevant, it should be excluded pursuant to MRE 403, as discussed later in this opinion.

 I do not know why the plurality suggests that I “misidentifyD the ‘fact that is of consequence,’ ” ante at 138 (emphasis deleted), because I agree with the pluraJiiy that “ ‘ “the ‘fact that is of consequence’ is the reasonable possibility of a zoning modification, as that possibility might have been perceived by a market participant on condemnation day.” ’ ” Ante at 139 n 32 (emphasis in the original). Where the plurality and I differ is with regard to whether evidence of a posttaking rezoning makes it “more probable” that a “reasonable possibility” of rezoning existed at the time of the taking. I agree with the plurality that the fact that the property was subsequently rezoned does not necessarily mean that a “reasonable possibility” of a rezoning existed at the time of the taking. However, the fact that the property was subsequently rezoned makes it “more probable” that a *172 “reasonable possibility” of a rezoning existed at the time of the taking than would the fact that the property was not subsequently rezoned.

 The plurality is impressive in the breadth of the analogies that it brings to bear in its analysis, ranging from probability to the stock market to psychology. If, as I understand it to be the plurality’s point, the future is unpredictable, I am persuaded. If, on the other hand, it is the plurality’s point that when the future becomes the present it is of no relevance in assessing what the prospects yesterday were of that future, I respectfully disagree.

 Other states have held that evidence of a posttaking rezoning is admissible to help the jury determine the “just compensation” due for the taking. Roach v Newton Redevelopment Auth, 381 Mass 135, 137; 407 NE2d 1251 (1980) (holding that “[ajctual amendment of the zoning law, subsequent to the taking, may be ‘weighty evidence’ of such a prospect”); Bembinster v Wisconsin, 57 Wis 2d 277, 284-285; 203 NW2d 897 (1973) (holding that “[t]he type of evidence which has been admitted as material as tending to prove a reasonable probability of change includes . . . the actual amendment of the ordinance subsequent to the taking”); Texas Electric Service Co v Graves, 488 SW2d 135, 137 (Tex App, 1972) (holding that “if subsequent to the taking and before the trial the ordinance was actually amended to permit the previously forbidden use then that of . itself was weighty evidence of the existence at the time of the taking of the fact that there was a reasonable probability of an imminent change”); Reeder v Iowa State Hwy Comm, 166 NW2d 839, 841 (Iowa, 1969) (holding that a rezoning ordinance enacted more than eight months after the taking, although not dispositive, was admissible). See also 9 ALR3d 291, § ll[a], p 320 (“[cjhange of an existing zoning ordinance, subsequently to the time of condemnation, has been held admissible in a trial for the award of compensation as bearing on the degree of probability and the imminence of the change at the time of the taking”); 4 Rathkopf s The Law of Zoning and Planning, § 75:8 (4th ed) (“[a] change in the zoning classification of a condemned parcel or similarly situated adjacent properties subsequent to a taking is considered weighty evidence of a reasonable probability of an imminent change at the time of taking”). Contrary to the plurality’s suggestion, ante at 144 n 40,1 have chosen to “blindly . . . follow the lead of these few jurisdictions,” only if the entirety of the analysis contained in this dissent is disregarded. I cite the above cases only to contrast the support in other states for the position expressed in this dissent with the utter absence of similar support for the majority’s position.

 “As to the condemnor/government in the hypothetical ‘fair market value’ scenario, the government stands in the shoes of a ‘willing [private] buyer.’ ” 13 Powell, Real Property, § 79E04[2][a][ii], p 39.

 “Not only does the ‘fair market value’ test posit a hypothetical buyer and a hypothetical seller, it also posits a hypothetical market....” 13 Powell, Real Property, § 79E04[2][a][iii][A], p 39.

 “Market value” or “fair market value” is defined as the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner who was willing but not obliged to sell it.
The hypothetical nature of this “value” should be obvious. Moreover, the condemnee is assumed to be not only a “willing seller” but also a person who will act as a purely economic creature, when in fact neither assumption may be true. One inescapable result of imposing the purely economic “willing seller” persona onto the condemnee is that the formula permits no compensation for subjective or sentimental attachment that the condemnee may have to the property. Only objective transferable value is considered. Subjective nontransferable value, such as ... sentimental value generally [is] not included in the just compensation calculation. [13 Powell, Real Property, § 79E04[2][a][i], pp 37-38.]

 The trial court instructed the jury:
Your award must be based upon the market value of the property as of the date of taking... .
The Court has instructed you on the subject of highest and best use. One of the things that must be considered in deciding what the highest and best use of the property was at the time of the taking is the zoning clarification — zoning classification of the property at that time. However, if there was a reasonable possibility, absent the threat of this condemnation case, that the zoning *179 classification would have been changed, you should consider this possibility in arriving at the value of the property on the date of taking. . . .
In this case, the market value of the property, both before and after the taking, must be determined as of December 7th, 1995, and not at an earlier or later date. [Emphasis added.]

 Justice Kelly contends that admission of evidence of a posttaking rezoning would be too confusing for a jury to handle, and the plurality concludes that such evidence “cannot be . .. easily ‘confined.’ ” Ante at 159, 160, 161; ante at 145 n 42.1 believe that a jury is quite capable of making a distinction between the fair market value of the property at the time of the taking and the fair market value of the property at some later time. I also believe that a jury is quite capable of understanding that just because the property today is zoned commercial does not necessarily mean that there was a “reasonable possibility” of the property being rezoned commercial 2Va years earlier. If jurors can be trusted sufficiently to determine what constitutes “just compensation,” or the fair market value of property, they can also be trusted to pay heed to the trial court when it plainly instructs them on proper and improper uses of evidence.
Justice Kelly has determined that “the jury was overwhelmed with the evidence of the posttaking rezoning,” that it “ignored significant evidence that rezoning was not foreseeable,” and that it “likely gave the posttaking evidence far more weight than it merited.” Ante at 161. There is no evidence to sustain this determination, other than the fact that the jury’s calculation of fair market value was closer to that proposed by defendants than by plaintiff. Moreover, “just compensation” is a factual question that is normally left to the jury to decide, not the judges of this or any other court.

 Contrary to Justice Kelly’s criticism, I am not attempting to “negate!] the trial court’s role as a gatekeeper.” Ante at 159.1 agree that it is the trial court’s role to exclude evidence with regard to which “its probative value is substantially outweighed by the danger of unfair prejudice ....” MRE 403. In view of her criticism, it is ironic that it is Justice Kelly who would reverse the decision of the trial court admitting evidence, finding this to constitute an abuse of discretion.

 The plurality asserts that the admission of evidence of a posttaking rezoning would “lead to gamesmanship” because it “would give condemning agencies every incentive to postpone zoning plans in order to reduce the price of just compensation.” Ante at 141 n 35. The plurality, however, fails to give any attention to the fact that the exclusion of such evidence will give the government the ability to paint a false or distorted picture of the worth of property in the face of a contrary reality. That is, while the admission of such evidence may lead to gamesmanship outside the courtroom, the exclusion of the evidence may lead to gamesmanship inside the courtroom. Besides the fact that the inclination of a government to engage in gamesmanship outside the courtroom may say much about its inclination within the courtroom, this Court must necessitously be most concerned about conduct within the courtroom. Maintaining the integrity of the legal process is one of our principal charges. Presumably, the political processes are available to address the conduct of governments that seek to thwart evidence in order to deny their own citizens fair market value for their “taken” properties.
Moreover, gamesmanship outside the courtroom is far less likely to arise than gamesmanship within the courtroom. Many factors play a role in a government’s decision whether or not to rezone property; how much the government will have to pay for property that has already been condemned is only one of these factors. On the other hand, during a trial in which the exclusive issue is how much does the government have to pay for the condemned property, the government’s dominant interest will always be to paint a picture of property of as little market value as possible.

 The plurality contends that my concern is misplaced because it was the city of Novi’s decision to rezone the property, not MDOT’s. Ante at 146 n 43. However, regardless of which governmental entity decided to rezone the property, it cannot be disputed that the majority’s decision to exclude evidence of the posttaking rezoning is beneficial to the government and detrimental to the private property owner.

 Although I conclude that evidence of a posttaking rezoning is admissible, I would caution that in admitting such evidence the trial court must carefully instruct the jury, as it did here, that the jury is to determine the market value at the time of the taking and that evidence of a posttaking rezoning is to be used only for the purpose of determining whether there existed at the time of the taking a “reasonable possibility” of rezoning. That is, the trial court must ensure that the jury does not “assign[] inflated significance” to the posttaking rezoning. Ante at 142 n 36. As the New Jersey Supreme Court has explained:
[A]n amendment of the ordinance which came into being after the date of taking should not be excluded solely because of the time sequence. But such evidence should be carefully confined to its proper role. It may serve only to support the reasonableness of the factual claim that on the date of taking the parties to a voluntary sale would have recognized and been influenced by the probability of an amendment in the near future in fixing the selling price. The fact would still remain that on the date of taking the property was otherwise zoned, and the value as of that date must still be reached on the basis of facts as they then would have appeared to and been evaluated by the mythical buyer and seller. [Gorga, supra at 118.]

 In determining the weight to be given to a posttaking rezoning in considering whether there existed a “reasonable possibility” of a rezoning at the time of the taking, the jury should consider the totality of the circumstances, including the time that has elapsed between the taking and the rezoning, the complexity of the project and the extent to which planning for such project must have predated the taking, changed circumstances within the jurisdiction creating or affecting the need for such rezoning, the nature of changes in the composition of the pertinent zoning body and within the relevant political jurisdiction and the extent *184 to which such changes were foreseeable, the credibility of public authorities on the circumstances surrounding a rezoning, the extent to which the taking itself caused the rezoning, and any reasonable inferences that can be drawn from the fact of an actual rezoning.

 MCL 213.70(1) provides, in pertinent part:
A change in the fair market value before the date of the filing of the complaint which .. . was substantially due to the general knowledge of the imminence of the acquiring by the agency . . . shall be disregarded in determining fair market value. Except as provided in section 23, the property shaU be valued in all cases as though the acquisition had not been contemplated.

 The plurality concludes that the trial court erred in admitting evidence of the posttaking rezoning and that this error was not harmless because: (1) “the jury no doubt believed that the fair market value of the property on the date of the taking was to be calculated as if rezoning were a fact," ante at 147 (emphasis in the original), a curious conclusion given that the trial court specifically instructed the jury that it was to determine what the fair market value of the property was “as of the date of taking” and the jury was made well aware that the rezoning did not take place until 2V2 years after the taking; and (2) “the trial court sorely compounded the error by refusing to allow MDOT to rebut the posttaking evidence by demonstrating that the rezoning was directly attributable to the condemnation itself.” Ante at 147. As explained above, I agree with the majority that the trial court abused its discretion in refusing to admit MDOT’s evidence. However, I disagree with the majority that the appropriate resolution is to remand for a new trial in which both defendants’ and plaintiff’s evidence is excluded. Instead, I would remand for a new trial in which both plaintiffs and defendants’ evidence is admitted.

 The Court of Appeals majority did not address this issue, concluding that “[i]n light of our ruling [that the trial court abused its discretion in admitting evidence of the posttaking rezoning], we need not address whether the trial court abused its discretion in prohibiting plaintiff from introducing evidence establishing that the rezoning was caused by the condemnation.” Slip op at 3 n 3.