STATE of Wisconsin EX REL. STUPAR RIVER LLC,
Petitioner-Appellant-Petitioner,

v.

TOWN OF LINWOOD PORTAGE COUNTY
BOARD OF REVIEW, Respondent-Respondent.

Supreme Court

*No. 2009AP191. Oral argument April 19, 2011.*
*—Decided July 22, 2011.*

2011 WI 82

(Also reported in 800 N.W.2d 468.)

For the petitioner-appellant-petitioner there were briefs by *Thomas W. Bertz* and *Anderson, O'Brien, Bertz, Skrenes & Golla*, Stevens Point and oral argument by *Thomas W. Bertz.*

For the respondent-respondent there was a brief by *Maris Rushevics*, Stevens Point and oral argument by *Maris Rushevics.*

¶ 1. MICHAEL J. GABLEMAN, J. Stupar River LLC (Stupar River) seeks review of an unpublished decision of the court of appeals affirming a decision of the Portage County Circuit Court, Thomas T. Flugaur, Judge, upholding the 2005 property tax assessment of the Wisconsin River Country Club (the subject property).[1]

¶ 2. Stupar River argues that the Town of Linwood Board of Review (Board) improperly upheld the assessment of the subject property for the 2005 tax year. Stupar River alleges that this assessment was at a

---

[1] *State ex rel. Stupar River LLC v. Town of Linwood Bd. of Review,* No. 2009AP191, unpublished slip op. (Wis. Ct. App. Dec. 30, 2009).

level significantly higher than its fair market value[2] in violation of Wis. Stat. § 70.32(1) (2003–04).[3] We conclude that the assessment upheld by the Board was made according to law and was supported by a reasonable view of the evidence, and affirm the court of appeals.

## I. BACKGROUND

¶ 3. The following facts are undisputed for the purposes of this appeal.

¶ 4. In 2001, Stupar River, a Wisconsin limited liability company, purchased the subject property in the Town of Linwood for $830,000. In 2002, the Town of Linwood assessed the subject property for property tax purposes at $1,831,500.[4] Stupar River filed an objection with the Board arguing that the 2002 assessment was

---

[2] This court has determined that "for the purposes of assessing real property . . . 'full value' . . . means market value. The terms 'full value,' 'market value' and 'fair market value' are synonymous and interchangeable in the opinions." *Flood v. Vill. of Lomira Bd. of Review,* 153 Wis. 2d 428, 435, 451 N.W.2d 422 (1990).

[3] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[4] On September 24, 2002, Stupar River filed a petition for a writ of certiorari, arguing that the Board erred by failing to assess the subject property at its recent sale price of $830,000. Stupar River's argument centered on the fact that Wis. Stat. § 70.32(1) requires assessors to value real property at the full market value that could ordinarily be obtained at private sale. The court of appeals concluded, however, that the 2001 sale of the subject property for $830,000 was not an arms-length transaction and, accordingly, upheld the Board's assessment at $1,831,500. *State ex rel. Stupar River LLC v. Town of Linwood Bd. of Review,* No. 2004AP108, ¶¶ 19, 24, unpublished slip op. (Wis. Ct. App. Apr. 21, 2005).

not equal to fair market value. The Board conducted a hearing on Stupar River's objection and affirmed the assessed value[5] of $1,831,500.

¶ 5. Stupar River then filed a petition for a writ of certiorari pursuant to Wis. Stat. § 70.47(13). On October 10, 2003, the Portage County Circuit Court, John V. Finn, Judge, set aside the 2002 assessment, concluding the valuation "was not made on the statutory basis," and remanded the case to the Board for a reassessment for the 2002 tax year. The Board appealed the decision of the circuit court to the court of appeals, which on April 21, 2005, reversed the circuit court and reinstated the Board's valuation for the 2002 tax year. *State ex rel. Stupar River LLC v. Town of Linwood Bd. of Review,* No. 2004AP108, ¶ 24, unpublished slip op. (Wis. Ct. App. Apr. 21, 2005). This decision of the court of appeals reinstating the 2002 tax assessment of the Board was never appealed, and is not before us today.

¶ 6. While the litigation challenging the 2002 assessment was pending, the subject property was assessed for the 2003 and 2004 tax years at the same value as 2002—that is, at $1,831,500. Stupar River paid its property taxes in 2003 and 2004 under protest.

¶ 7. For the 2005 tax year, the property assessment of the subject property was increased to $1,893,400.[6] On October 1, 2005, Stupar River filed a

---

[5] "Assessed Value" is defined as "[a] dollar amount assigned to the taxable property . . . by the assessor for the purpose of taxation . . . . [A] levy is applied directly against [the assessed value of the property] to determine the tax due." Bureau of Assessment Practices, Wis. Dep't of Revenue, Wisconsin Property Assessment Manual, G-1 (2011). A levy is "[t]he imposition of a fine or tax." *Black's Law Dictionary,* 919 (7th ed. 1999).

[6] This figure is representative of a $61,900 increase in the assessed value for 2005 in comparison to tax years 2002, 2003,

written objection to the 2005 assessment with the Board, arguing that the 2005 assessment was not equal to the fair market value of the subject property. On November 16, 2005, the Board, pursuant to Wis. Stat. § 70.47(7)(a), conducted an evidentiary hearing.

¶ 8. At the evidentiary hearing, the Board heard sworn testimony relating to three competing assessments of the subject property. Scott Williams, an appraiser[7] for the Town of Linwood, testified that based upon his review, he valued the subject property at $1,500,000. Daniel Mielke, the assessor for the Town of Linwood, who concluded that the assessed value of the subject property in 2005 was $1,893,400, testified in support of his assessment. Finally, Steven Vitale, on behalf of Stupar River, submitted a written appraisal document, which valued the subject property at $1,190,000.

¶ 9. On November 21, 2005, the Board upheld the 2005 assessment.

¶ 10. Stupar River subsequently petitioned for certiorari review of the Board's November 21, 2005 determination. The circuit court gave its oral ruling on Stupar River's petition on March 27, 2008. By this time, the 2006 and 2007 assessments of the subject property

and 2004. The record indicates that the reason for the increase was that the value of timber located upon the subject property had increased by this amount.

[7] A certified property appraiser is authorized to inspect and appraise real and personal property for assessment purposes, but is not authorized to perform the duties of an assessor. *Wisconsin Property Assessment Manual*, 2–2 (12/2010). In contrast, a certified assessor is authorized to perform the duties of a property appraiser and is additionally responsible for all assessed values of real and personal property in the assessment district for which the individual is the statutory assessor. *Id*.

were also complete.[8] Both the 2006 and 2007 assessments of the subject property were $1,435,900—a decrease of $457,500 from the 2005 assessment and a decrease of $394,500 from the 2002, 2003, and 2004 assessments. Stupar River did not challenge the accuracy of the 2006 assessment at the circuit court. Instead, Stupar River argued that the 2006 assessment established as a matter of law that the assessments for 2003, 2004, and 2005 were significantly higher than the subject property's fair market value.[9]

¶ 11.   On May 12, 2008, the circuit court remanded the action to the Board with instructions to "reassess the [subject property] for the years 2003, 2004, and 2005 to be consistent with the assessment for 2006 . . . or provide a rational explanation as to why the property's assessed value has decreased in value."

¶ 12.   In response to the order of the circuit court, the Board submitted a letter from Mielke, which explained that the comparatively lower amount of the 2006 assessment was not due to any change in the fair

---

[8] The record indicates that the delay between the November 16, 2005 evidentiary hearing before the Board and the March 27, 2008 oral ruling by the circuit court was due to difficulty in obtaining a transcript of the 2005 hearing. Board of review hearings are typically tape recorded, and later transcribed if the matter is appealed. As Judge Flugaur noted, "[i]t's the same transcript that . . . one secretary said she would prefer to run naked through rush-hour traffic in downtown Chicago rather than finish typing it."

[9] The parties dispute whether the 2003 and 2004 assessments are properly before us. Stupar River makes the same argument in regard to these assessments that it made in regard to the 2005 assessment. Like the court of appeals, we do not address this issue because we reject Stupar River's argument that the 2005 assessment of the subject property was excessive in violation of Wis. Stat. § 70.32(1).

market value of the subject property. He explained that, upon review of the Department of Revenue Major Class Comparison Report issued in 2005, he had concluded it was necessary to lower the total assessed value of the commercial class[10] of properties in order to "bring it back in line with the other classes of properties." Mielke stated that the 2006 assessment was lower than the 2005 assessment because of an overall downward adjustment he made to the assessed values of all of the commercial class properties in the Town of Linwood.

¶ 13.   In response to Mielke's letter explaining the reduction in the 2006 assessment in comparison to the 2005 assessment, Stupar River submitted a letter from Carol Kuehn, a retired assessor from Stevens Point, Wisconsin. In her letter, Kuehn argued that Mielke's letter did not provide a rational explanation for the subject property's lower assessment in 2006. Kuehn's letter stated "Mielke's claimed methodology" for reducing the subject property's assessment in 2006 was "misguided and not rational" for the following reasons: (1) the aggregate value of the commercial class of property in the Town of Linwood is not more than 5% of

---

[10] Wisconsin Stat. § 70.32(2)(a) provides, in pertinent part:

The assessor shall segregate into the following classes on the basis of use . . . :

1. Residential.

2. Commercial.

3. Manufacturing.

4. Agricultural.

5. Undeveloped.

5m. Agricultural forest.

6. Productive forest land.

7. Other.

the fair market value of the taxation district,[11] and therefore, Mielke was not statutorily required to adjust the commercial class of properties;[12] (2) Mielke improperly reduced the subject property by 24%, while all other commercial properties were reduced by 36%; and (3) because Mielke assessed the subject property in 2006 at $1,435,900, and "[b]oth the assessor and the Department of Revenue indicate that the commercial class of property has not decreased in value" from 2005 to 2006, the accurate value for the 2005 assessment was $1,435,900.

¶ 14.   On October 28, 2008, the circuit court concluded that the Board provided a sufficient explanation for the reduction of the 2006 assessment in comparison with the 2005 assessment and affirmed the Board's determination. On appeal, the court of appeals concluded that "[t]he reduction in the 2006 assessment was not based on a change in the fair market value of the [subject] property, but was based on an attempt to equalize market value in response to a Wisconsin Department of Revenue report." *Stupar River LLC,* No. 2009AP191, ¶ 8. The court of appeals held that, because the 2006 assessment was not reduced in order to reflect a change in the subject property's fair market

---

[11] Wisconsin Stat. § 70.05(5)(a)3. defines "any class of property that includes more than 5% of the full value of the taxation district" as a "major class of property."

[12] Contrary to Kuehn's argument, Wis. Stat. § 70.05(5)(d) does not require that the aggregate value of the commercial class be within 10% of the other classes. Instead, the statute requires that the "assessed value of each major class of property of a taxation district" must be "within 10% of the full value of the same major class of property . . . during the 4–year period consisting of the current year and the 3 preceding years . . . ." Wis. Stat. § 70.05(5)(d).

value, Stupar River's argument was premised on an inaccurate assumption. *Id.*, ¶ 9. Accordingly, the court of appeals affirmed the decision of the circuit court.

¶ 15. Stupar River then petitioned this court for review, which we granted on September 22, 2010.

## II. STANDARD OF REVIEW

¶ 16. Stupar River asks this court to overturn the Board's decision to uphold the property tax assessment of the subject property for the 2005 tax year. In a certiorari action under Wis. Stat. § 70.47(13), we review the Board's decision independently, but benefiting from the analyses of the circuit court and court of appeals. *ABKA Ltd. P'ship v. Bd. of Review of the Village of Fontana-On-Geneva Lake,* 231 Wis. 2d 328, 335, 603 N.W.2d 217 (1999) (internal quotations and citations omitted). In our review, we look for "any error in the proceedings of the board which renders the assessment or the proceedings void." Wis. Stat. § 70.47(13). Our review is a "strictly limited" one, *ABKA Ltd. P'ship,* 231 Wis. 2d at 335, confined only to determining whether the Board's actions were: (1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) supported by evidence such that the Board might reasonably make the order or determination in question. *State ex rel. Mitchell Aero, Inc. v. Bd. of Review,* 74 Wis. 2d 268, 281–82, 246 N.W.2d 521 (1976). Stupar River's argument centers on the second of these four elements, contending that the Board failed to act according to law, and that is consequently our focus as well.

¶ 17. If the assessment is made in accordance with the statutory mandate, it must be upheld if it can

571

be supported by any reasonable view of the evidence. *Waste Mgmt. of Wisconsin, Inc. v. Kenosha Cnty. Bd. of Review*, 184 Wis. 2d 541, 555, 516 N.W.2d 695 (1994). "In determining whether there is enough evidence to sustain the assessment, the presumptions are all in favor of the rightful action of the Board." *ABKA Ltd. P'ship,* 231 Wis. 2d at 335 (internal quotations and citations omitted).

¶ 18. Stupar River argues that the Board, by upholding the 2005 assessment, violated Wis. Stat. § 70.32(1). Whether the Board followed the statute in making its assessment is a question of statutory interpretation that we review de novo. *Adams Outdoor Adver., Ltd. v. City of Madison,* 294 Wis. 2d 441, ¶ 26, 717 N.W.2d 803.

### III. DISCUSSION

¶ 19. The question before us is whether the Board acted according to law when it upheld the 2005 assessment of the subject property.

¶ 20. Stupar River argues that (1) the assessed value of a property must, pursuant to Wis. Stat. § 70.32(1), equal that property's fair market value, (2) Mielke submitted to the Board that the fair market value of the subject property remained "about the same" from 2003 through 2006, (3) in 2006, the assessed value of the subject property was $1,435,900, and therefore, (4) the assessed values of the subject property in 2003 ($1,831,500), 2004 ($1,831,500), and 2005 ($1,893,400) must necessarily be above the fair market value of the subject property. Accordingly, Stupar River contends the assessments for 2003, 2004, and 2005 are overassess-

ments in violation of the plain language of Wis. Stat. § 70.32(1).[13]

¶ 21. The Board counters this argument by pointing to Mielke's explanation that the reduction in the subject property's assessed value from 2005 ($1,893,400) to the assessed value in 2006 ($1,435,900) was based on "an overall class adjustment" to the total assessed value of all commercial property in the Town of Linwood, and that the reduction was not done in an attempt to reflect the fair market value of the subject property.[14]

¶ 22. Stupar River argues that, regardless of Mielke's reasoning, the 2006 assessment must, pursu-

---

[13] Wisconsin Stat. § 70.32(1) provides:

Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

Pursuant to Wis. Stat. § 70.32(1), an "assessor's task is to identify the market value of a fee simple interest as described by the Property Assessment Manual, and which reflects the 'full value' that could ordinarily be obtained at a private sale . . . ." *Walgreen Co. v. City of Madison,* 2008 WI 80, ¶ 20, 311 Wis. 2d 158, 752 N.W.2d 687.

[14] Stupar River's criticism of the 2006 assessment is irrelevant because Stupar River has never brought a legal action challenging the validity of that assessment. Accordingly, the validity of the 2006 assessment is not before us.

ant to Wis. Stat. § 70.32(1), equal the subject property's fair market value. This argument rests on the false premise that the assessed value of a property must *equal* the fair market value of that property in order to comply with Wis. Stat. § 70.32(1).

¶ 23.  Without question, assessors must base assessments of real property on the property's fair market value. *See* Wis. Stat. § 70.32(1). However, as the plain language of the Property Assessment Manual[15] (Manual) makes clear, a property's fair market value is not synonymous with its assessed value. Manual, 1–28. The Manual explains that "[i]n most cases individual property assessments are at *different* levels than the value standard"—that is to say, different than the property's fair market value.[16] Manual, 1–22 (emphasis added). In fact, the Manual notes that "both assessed and fair market values are shown on property tax bills." Manual, 1–28.

¶ 24.  The Department of Revenue discusses this concept in its standard "Assessment Objection Procedure" form:

---

[15] Wisconsin Stat. § 70.32(1) requires that assessors adhere to the Manual, absent conflicting law. *See Walgreen,* 311 Wis. 2d 158, ¶ 3.

[16] The Manual describes the "value standard" as:

> The basis for the methods used in estimating values for the equalized or assessed values. There are two basic values used in the process, the market value ('full value' for real property and 'true cash value' for personal property), which is the basis for value of all property except agricultural land. The market value is based on the most probable selling price of the property. Agricultural land, as defined by administrative rule, is based on a valuation standard which analyzes the ability to generate income as it is currently being used, hence 'use value'.

Manual, G-6.

Wisconsin statutes require all non-agricultural property to be assessed at full market value as of January 1 each year. The courts have determined that assessments *at a percentage* of full market value are acceptable when applied uniformly. Therefore, to determine if your assessment is fair, you must analyze it in relation to full market value.

(Emphasis added.) Simply put, a property's assessed value is *based on* fair market value but a property's assessed value is not necessarily *equal to* its fair market value.[17] It is axiomatic that assessors may assign to taxable property an assessed value of less than 100 percent of the property's fair market value[18] when

[17] *See, e.g., Rite-Hite Corp. v. Bd. of Review of Vill. of Brown Deer,* 216 Wis. 2d 189, 197, 575 N.W.2d 721 (Ct. App. 1997) (residential, commercial, and manufacturing properties assigned assessed values at 87 percent of fair market value); *Noah's Ark Family Park v. Bd. of Review of the Vill. of Delton,* 210 Wis. 2d 301, 307, 565 N.W.2d 230 (Ct. App. 1997) (commercial properties assigned assessed values between 19 and 91 percent below their fair market values); *State ex. rel. N/S Assocs. v. Bd. of Review of Vill. of Greendale,* 164 Wis. 2d 31, 40, 473 N.W.2d 554 (Ct. App. 1991) (commercial property assigned an assessed value of 88 percent of fair market value); *Fontana v. Vill. of Fontana-on-Geneva Lake,* 107 Wis. 2d 226, 229, 319 N.W.2d 900 (Ct. App. 1982) (commercial property assigned an assessed value of 80 percent of fair market value); *Mitchell Aero,* 74 Wis. 2d at 271 (commercial property assigned an assessed value of 55 percent of fair market value); *State v. Jordon,* 182 Wis. 645, 197 N.W. 189 (1924) (residential property assigned an assessed value of 50 percent of fair market value).

[18] We have previously held that, pursuant to Wis. Stat. § 70.32(1), an assessor may not assign a property an assessed value greater than the property's fair market value. *Flood,* 153 Wis. 2d at 431 ("We also hold that sec. 70.32(1) proscribes assessing real property in excess of market value.").

applied uniformly.[19] We therefore reject Stupar River's argument that the 2005 assessment was an overassessment in violation of the plain language of Wis. Stat. § 70.32(1), and conclude that the 2005 assessment was made according to law.

¶ 25. Having concluded that the 2005 assessment was made in accordance with the statutory mandate of Wis. Stat. § 70.32(1), we must uphold that assessment if it can be supported by any reasonable view of the evidence. *Waste Mgmt.*, 184 Wis. 2d at 555. In determining whether there is enough evidence to sustain the 2005 assessment, "the presumptions are all in favor of the rightful action of the Board." *ABKA Ltd. P'ship,* 231 Wis. 2d at 335 (internal quotations and citations omitted). As such, the burden rests upon Stupar River to prove that the Board lacked sufficient evidence to uphold the 2005 assessment.

¶ 26. During the November 16, 2005 evidentiary hearing, the Board heard lengthy sworn testimony from Mielke regarding the 2005 assessment. During his testimony, Mielke provided a detailed account of how he reached his determination that the subject property's assessed value was $1,893,400. His testimony also included several responses to questions raised by the Board, as well as by counsel representing Stupar River

---

[19] The uniformity clause of the Wisconsin Constitution, found in art. VIII, § 1, provides: "The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods." This provision has been interpreted to "require[] that the method or mode of taxing real property must be applied uniformly to all classes of property within the tax district." *State ex rel. Levine v. Bd. of Review,* 191 Wis. 2d 363, 371, 528 N.W.2d 424 (1995).

and the Town of Linwood regarding his methodology and reasoning. The Board also heard sworn testimony supporting the competing appraisals from Williams and Vitale, to which Mielke responded in turn.

¶ 27. Stupar River's only argument in support of its challenge to the correctness of the 2005 assessment centers upon a comparison of that assessment to the 2006 assessment. Beyond this comparison, Stupar River fails to point to any evidence in the record that would lead this court to question the accuracy of the 2005 assessment and, therefore, Stupar River has failed to overcome the strong presumption "in favor of the rightful action of the Board." *Waste Mgmt.,* 184 Wis. 2d at 555. Therefore, after reviewing the record, we conclude that the 2005 assessment is supported by a reasonable view of the evidence.

¶ 28. Accordingly, we conclude that the Board properly upheld the 2005 assessment and we affirm the court of appeals.

## IV. CONCLUSION

¶ 29. Stupar River argues that the Board improperly upheld the assessment of the subject property for the 2005 tax year. Stupar River alleges that this assessment was at a level that was significantly higher than its fair market value in violation of Wis. Stat. § 70.32(1). We conclude that the assessment upheld by the Board was made according to law and was supported by a reasonable view of the evidence, and affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.