COURT OF APPEALS
DECISION
DATED AND FILED

May 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1113**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV2956

IN COURT OF APPEALS
DISTRICT IV

---

JOHN T. LANGE AND JOHN T. LANGE LIVING TRUST,
DATED OCTOBER 28, 2016,

    PLAINTIFFS-APPELLANTS,

V.

CITY OF MIDDLETON,

    DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. The City of Middleton ("the City") issued a statutory award of damages to John T. Lange and the John T. Lange Living Trust (collectively, "Lange") as just compensation for a partial taking of Lange's property ("the property"). Lange appealed that award to the Dane County Circuit Court, and the court determined that Lange is entitled to a lower amount of compensation for the partial taking than the City offered in the statutory award of damages. The circuit court entered a judgment ordering that Lange pay the City $9,544, the difference between the statutory award and the compensation determined by the court.

¶2    On appeal, Lange argues that circuit court's determination of just compensation was erroneous for four separate reasons. First, Lange contends that the circuit court applied an incorrect legal standard in determining just compensation. Second, Lange argues that the court erred in excluding from evidence the value at which the property had been assessed for taxation purposes. Third, Lange contends that the circuit court erroneously denied Lange's motion to strike the City's untimely post-trial filings. Fourth, Lange argues that the circuit court's findings of fact were clearly erroneous. For the following reasons, we affirm.

## BACKGROUND

¶3    The property is a parcel of land that is located at the intersection of University Avenue and Parmenter Street in the City of Middleton, Wisconsin. For many years, PDQ, Inc. leased the property from Lange and operated a small

gasoline station and convenience store ("C-store")[1] on the site. In 2017, Kwik Trip Inc. acquired PDQ's leasehold interest in the property. Kwik Trip did not continue C-store operations at this location and removed the gas tanks, gas pumps, canopy, related gas dispensing equipment, signage, and most interior equipment and improvements. However, Kwik Trip did not remove the building located on the property.

¶4　　In 2018, using its eminent domain authority, the City took a portion of the property for the purpose of reconstructing University Avenue. The City also acquired the rights to a temporary limited easement on the property for the reconstruction project. The building on the property was demolished for the partial taking and the property was left vacant. The City paid Lange $309,300 as a statutory award of damages for the partial taking pursuant to WIS. STAT. § 32.05(7) (2019-20),[2] and Lange appealed that award to the circuit court pursuant to § 32.05(11). The parties agreed to proceed with a bench trial rather than a jury trial. *See* § 32.05(11) ("[The action] shall be tried by jury unless waived by both plaintiff and defendant.").

¶5　　At trial, three expert witnesses—two called by Lange and one called by the City—testified as to the condition and fair market value of the property before and after the taking. We now summarize their pertinent testimony.

---

[1] Consistent with the record and the parties' briefing in this court, we use the term "C-store" to refer to a gas station with a convenience store.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶6     Lange first called Michael Herl, a real estate broker. Herl testified that the fair market value of the property before the taking (the "before value") was $701,100 and that the highest and best use of the property before the taking was to improve the building for office or retail use. Lange also called Dominic Landretti, a real estate appraiser. Landretti opined that the before value of the property was $720,000. Landretti testified that the highest and best use of the property before the taking was to reinstall the gas pumps and tanks and return the property to C-store use. The City called Scott MacWilliams, a real estate appraiser. MacWilliams determined that the before value of the property was $360,000 and that the highest and best use before the taking was to improve the property for office or retail use.

¶7     The three expert witnesses also testified as to their opinions of the fair market value of the property after the taking (the "after value"). Herl opined that the property had no immediate use and thus had an after value of one dollar. Landretti and MacWilliams both determined that the highest and best use after the taking is to assemble the property with neighboring properties.[3] Landretti testified that the after value of the property is $35,000, while MacWilliams testified that the after value of the property is $71,700. We consider other testimony of the experts in the Discussion section of this opinion.

¶8     During his direct examination, Landretti was asked about the 2018 tax assessment of the property. The City objected to the admissibility of that

_____

[3] Our supreme court has defined the "doctrine of assemblage" as follows: "[w]here the highest and best use of separate parcels involves their integrated use with the lands of another, such prospective use may be properly considered in fixing the value of the property if the joinder of the parcels is reasonably practicable." *Clarmar Realty Co. v. Redevelopment Auth. of Milwaukee*, 129 Wis. 2d 81, 87, 383 N.W.2d 890 (1986).

information, and the circuit court sustained the objection. As part of an offer of proof, Landretti testified that the property had been assessed for tax purposes at a value of $679,000 in 2017 and $508,000 in 2018. We further consider this testimony in the Discussion section of this opinion.

¶9 At the conclusion of the evidence, the circuit court ordered both parties to submit their final arguments and proposed findings of fact in writing by January 1, 2021. Lange filed a post-trial brief by January 1, 2021, but the City did not file its post-trial brief until January 15, 2021. Lange moved to strike the City's brief as untimely, and the City moved to extend the deadline. The court held a status conference and denied Lange's motion. This status conference was not on the record.

¶10 In a written decision, the circuit court gave weight to the opinions of MacWilliams, the City's expert, and determined that the property had a before value of $360,000 and an after value of $71,700. After making adjustments that are not in dispute based on the temporary limited easement, the court determined that Lange is owed $299,756 in just compensation for the City's taking. Pursuant to WIS. STAT. § 32.05(11)(a),[4] the court entered a judgment for the City in the

---

[4] WISCONSIN STAT. § 32.05(11)(a) provides in full:

> If the jury verdict as approved by the court does not exceed the basic award, the condemnor shall have judgment against the appellant for the difference between the jury verdict and the amount of the basic award, plus interest on the amount of such difference from the date of taking.

Sec. 32.05(11)(a). There was no jury verdict in this matter because, as noted, the parties agreed to waive a jury trial and proceed with a bench trial. Nonetheless, the parties do not dispute that § 32.05(11)(a) applies when the circuit court determines that the amount of just compensation does not exceed the award of damages.

amount of $9,544—the difference between the amount the City's award of damages to Lange and the lower amount of compensation determined by the court. Lange appeals the court's determination of just compensation.

¶11    Additional material facts are discussed later in this opinion.

## DISCUSSION

¶12    As noted, Lange argues that this court should vacate the judgment and remand for a new trial because the circuit court erred in four separate ways: (1) the court applied an incorrect legal standard for determining "just compensation"; (2) the court excluded Landretti's testimony regarding the assessed value of the property for taxation purposes; (3) the court denied Lange's motion to strike the City's post-trial filings; and (4) the court's findings of fact were clearly erroneous. We address each argument in turn.

## I.  The Circuit Court Applied the Correct Standard for Determining Just Compensation.

¶13    Lange argues that the circuit court applied an incorrect legal standard for determining just compensation. "Whether the circuit court has applied the correct legal standard is a question of law reviewed de novo." *Landwehr v. Landwehr*, 2006 WI 64, ¶8, 291 Wis. 2d 49, 715 N.W.2d 180.

¶14    Lange contends that the following single sentence from the court's written decision indicates that the circuit court applied an incorrect legal standard:

> Just compensation "means compensation that would be just in regard to the public, as well as in regard to the individual." *Milwaukee Post No. 2874 VFW v. Redev[elopment] Auth. Of Milwaukee*, 2009 WI 84, ¶50, 319 Wis. 2d 553, 768 N.W.2d 749.

6

According to Lange, the proper measure of just compensation is set forth in WIS. STAT. § 32.09(6) and does not involve a consideration of what is "just in regard to the public" or what is "just in regard to the individual." Lange contends that these "equitable" considerations apply only when "market value is difficult or impossible to find, or when market value would result in 'manifest injustice' to the owner or to the public." The City does not dispute that the considerations cited in the single sentence from the circuit court's decision are not properly taken into account in determining just compensation.

¶15 Regardless of the one sentence in the decision of the circuit court that Lange asserts is erroneous, we conclude that the circuit court applied the proper legal standards in determining just compensation.

¶16 Examining the circuit court's written decision, we observe that the circuit court provided its analysis of the applicable authorities in a section entitled "Conclusions of Law." In this section, the court set forth the proper standard for calculating just compensation under WIS. STAT. § 32.09(6)[5] and *Clarmar Realty Co. v. Redevelopment Authority of Milwaukee*, 129 Wis. 2d 81, 92, 383 N.W.2d

---

[5] The portion of WIS. STAT. § 32.09(6) quoted by the court in its decision states:

> In the case of a partial taking of property other than an easement, the compensation to be paid by the condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement….

Sec. 32.09(6).

890 (1986).[6]  Lange does not dispute that these standards are applicable in the present case.  In addition, the circuit court determined the best use and fair market value for the property both before and after the taking and calculated just compensation based on that evidence.

¶17    Our review of the record and the court's written decision does not reveal any indication that the circuit court considered what would be "just" in regard to the "public" or the "individual" when determining just compensation as Lange asserts.  Other than the single sentence that Lange highlights, Lange does not point to any portion of the court's decision which would reasonably lead to the conclusion that the circuit court conducted a determination of just compensation using an erroneous legal standard.  In sum, we conclude that the circuit court applied the proper legal standard in determining just compensation.

## II.  The Circuit Court's Exclusion of Evidence.

¶18    Lange argues that a new trial is necessary because the circuit court erroneously excluded, on the ground of lack of relevance, Landretti's testimony

---

[6] In the portion of *Clarmar Realty* that the circuit court cited, our supreme court set forth the standard for determining the fair market value of land with regard to the "potential assemblage," as mentioned above, of that property with other lands:

> [A] court may determine the fair market value of a condemned parcel of land in combination with the land or lands of another in a prospective, integrated use if:  1) the prospective, integrated use is the "most advantageous" use of the condemned land;  2) the "most advantageous" use can be achieved only through combination with another parcel or parcels;  3) combination with another parcel or parcels is "reasonably probable;"  and 4) the prospective, integrated use is not speculative or remote.

*Clarmar*, 129 Wis. 2d at 92.

regarding the tax assessments of the property. The City responds that the court properly excluded Landretti's testimony. The City also in essence argues that, even if the circuit court erroneously excluded Landretti's testimony, this court should not remand for a new trial because any error is harmless. We assume, without deciding, that the circuit court erroneously excluded Landretti's testimony regarding the tax assessed value of the property. For the following reasons, we conclude that the assumed error would be harmless.

¶19    "An erroneous exercise of discretion in admitting or excluding evidence does not necessarily lead to a new trial." *Martindale v. Ripp*, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698. In determining whether an error is harmless, this court must determine whether the error "affected the substantial rights of the party." *Id.*, ¶31 (citing WIS. STAT. § 901.03 and WIS. STAT. § 805.18(2)). For an error to affect the substantial rights of a party, "there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Id.*, ¶32. "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (quoting *State v. Dyess*, 124 Wis. 2d 525, 544-45, 370 N.W.2d 222 (1985)).

¶20    We now summarize Landretti's testimony from Lange's offer of proof made at trial. The property was assessed for tax purposes in 2017 and 2018. Landretti testified that the overall assessed value of the property had dropped from $697,000 in 2017 to $508,000 in 2018. The assessments indicated that, while the land value had risen from $231,100 in 2017 to $421,600 in 2018, the building and improvement value had dropped from $465,900 in 2017 to $86,400 in 2018. Landretti opined that the higher land value and lower building and improvement value in the 2018 assessment reflected Kwik Trip's decision to remove the gas pumping facilities and equipment in 2017. Landretti also testified that the

9

assessments were required by statute to be "within 10 percent of market value once in a five-year period," although Landretti did not identify the statute on which he based this assertion in the proffer.

¶21    As we now discuss, there is no reasonable possibility that the assumed error by the circuit court contributed to the outcome of this action. Lange's proffer did not establish that Landretti had knowledge of the basis of the property tax assessments such that a reasonable fact finder would have given any weight to the proffered testimony.  As the City correctly observes, properties are often assessed for taxation purposes using a mass appraisal technique as opposed to a single property appraisal technique.  *See Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶¶43-46, 379 Wis. 2d 141, 905 N.W.2d 784.  Whereas a single property appraisal is "the valuation of a single particular property as of a given date," a mass appraisal is "the systematic appraisal of groups of properties, as of a given date, using standardized procedures and statistical testing."  *Id.*, ¶¶29-30.  Here, however, Lange provided no evidence of the methodology or calculations that were used in determining the tax assessed value of the property, including whether the assessments were calculated using a mass appraisal, a single property appraisal, or some other technique.  Further, Lange provided no evidence about whether the methodology used to calculate the tax-assessed value of the property is comparable to the methodology that must be used in eminent domain proceedings to determine the value of the property.  *See* WIS. STAT. § 32.09 (setting forth the rules governing the determination of just compensation in eminent domain proceedings).  Without such evidence, the circuit court would have given no weight to Landretti's excluded testimony because the court would have had no basis to determine whether the tax-assessed value of the property is an

accurate and reliable indicator of the property's value for eminent domain valuation purposes.

¶22   Lange contends that the admission of Landretti's testimony regarding the tax-assessed value of the property would have altered the circuit court's decision, and we reject each of those arguments.  First, Lange argues that the assessed value of the property is a reliable indicator of the property's fair market value because WIS. STAT. § 70.32(1) requires that property tax assessments be based on the fair market value of the property.  *See* § 70.32(1) ("Real property shall be valued by the assessor … at the full value which could ordinarily be obtained therefor at private sale."); *State ex rel. Stupar River LLC v. Town of Linwood Portage Cnty. Bd. of Rev.*, 2011 WI 82, ¶23, 336 Wis. 2d 562, 800 N.W.2d 468 ("Without question, assessors must base assessments of real property on the property's fair market value." (citing § 70.32(1))).  However, it is important to our analysis that our supreme court cautions that "a property's fair market value is not synonymous with its assessed value."  *Stupar River*, 336 Wis. 2d 562, ¶23. "Simply put, a property's assessed value is *based on* fair market value but a property's assessed value is not necessarily *equal to* its fair market value."  *Id.*, ¶24.  These statements from our supreme court recognize that, while property tax assessments should generally reflect a property's fair market value, those assessments are not necessarily a reliable indicator of the property's fair market value for eminent domain valuation purposes.  In the present case, as described earlier, Lange has not provided any evidence regarding the methodology used to calculate the assessed value of the property.  Based on this lack of evidence and our supreme court's holding in *Stupar River*, the circuit court would have had no

basis to conclude that the tax assessments reliably reflected the property's fair market value in these circumstances.[7]

¶23    Second, Lange contends that the excluded evidence would have made a difference to the outcome because the circuit court was not allowed to determine that the fair market value of the property is lower than the tax-assessed value. Lange supports this argument by referencing case law from our supreme court which states that the assessed value of a property may not be greater than the property's fair market value. *See Flood v. Village of Lomira, Bd. of Rev.*, 153 Wis. 2d 428, 431, 451 N.W.2d 422 (1990) ("[WIS. STAT. §] 70.32(1) proscribes assessing real property in excess of market value."). However, if we were to accept Lange's application of this rule, then the circuit court in this case, and courts in many eminent domain cases, would be effectively bound by the tax assessed value of the property regardless of relevant and reliable evidence that the fair market value is in fact lower than the assessed value. This suggestion is particularly problematic here because Lange has failed to demonstrate that the tax assessments are reliable evidence of the property's fair market value, as already discussed. Accordingly, we reject Lange's argument that the circuit court was prohibited from determining that the fair market value of the property for eminent domain purposes was lower than the assessed value of the property for tax purposes.

---

[7] Lange also suggests that the tax assessments are reliable because, in Lange's view, WIS. STAT. § 70.05(5) requires assessments to be within ten percent of market value once every five years. However, Lange does not develop this argument in the briefing. We decline to address this undeveloped argument. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge").

¶24 In sum, we conclude that any error in excluding the proffered portion of Landretti's testimony was harmless because Lange has not demonstrated a reasonable possibility that such evidence, if admitted, would have altered the circuit court's determination of the fair market value of the property. *Martindale*, 246 Wis. 2d 67, ¶32.

### III. Lange's Motion to Strike the City's Post-Trial Filings.

¶25 Next, Lange argues that the circuit court erred in granting the City's motion to extend the time to submit its post-trial filings and in denying Lange's motion to strike those filings as untimely. Lange contends that the City's motion to extend is governed by WIS. STAT. § 801.15(2)(a),[8] and that the circuit court failed to determine whether the City's conduct constituted "excusable neglect" pursuant to that statute. The City responds that Lange fails to provide a transcript of the court's reasoning for its rulings on these motions and, therefore, we must assume that those rulings are supported by proper considerations. The City also disputes Lange's contention that § 801.15(2)(a) applies and, instead, argues that the circuit court has broad discretion in this area pursuant to the court's inherent authority to manage its docket and calendar.

---

[8] WISCONSIN STAT. § 801.15(2)(a) provides in relevant part:

> When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown and upon just terms…. If the motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.

Sec. 801.15(2)(a).

¶26 Solely for the purpose of considering Lange's argument, we assume without deciding that this issue is governed by the excusable neglect standard under WIS. STAT. § 801.15(2)(a). "A circuit court's finding of excusable neglect 'will not be disturbed by an appellate court unless an [erroneous exercise] of discretion is clearly shown.'" *Casper v. American Int'l S. Ins. Co.*, 2011 WI 81, ¶36, 336 Wis. 2d 267, 800 N.W.2d 880 (quoted source omitted).

¶27 We conclude that Lange has failed to demonstrate that the circuit court erroneously exercised its discretion. As the appellant, it is Lange's responsibility to provide this court with a record that is sufficient to review this issue. *See Hometown Bank v. Acuity Ins.*, 2008 WI App 48, ¶6 n.5, 308 Wis. 2d 503, 748 N.W.2d 203 ("The burden is on [appellant] to provide a record sufficient to review its appellate issues."). However, Lange has not provided a transcript of the circuit court's reasoning at that status conference on these issues or any written decision explaining the court's reasoning. The only indication in the record that this conference occurred is a "minute sheet" stating that the court denied Lange's motion, but this minute sheet does not state the reasoning for the court's decision.

¶28 "[W]hen an appeal is brought on a partial [record], the scope of the review is necessarily confined to the record before the court." *Austin v. Ford Motor Co.*, 86 Wis. 2d 628, 641, 273 N.W.2d 233 (1979). "[W]hen an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling." *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993); *Austin*, 86 Wis. 2d at 641 ("[T]he court will assume, in the absence of a transcript, that every fact essential to sustain the [circuit court's] exercise of discretion is supported by the record."). A "minute sheet" of a hearing is not a sufficient record for review of a court's discretionary decision at that hearing. *Butcher v.*

*Ameritech Corp.*, 2007 WI App 5, ¶35, 298 Wis. 2d 468, 727 N.W.2d 546 (2006). Accordingly, we assume that a transcript of the status conference would establish that the circuit court properly exercised its discretion in ruling on the parties' motions. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("[Appellants] are unable to demonstrate the circuit court erroneously exercised its discretion where the court's reasons for exercising its discretion as it did are not included in the record.").

¶29 Lange suggests that the ordinary burden of the appellant to provide a record of the status conference does not apply here because the circuit court purportedly did not go on the record during this conference. We reject Lange's suggestion because Lange had the obligation to request a record of that conference if Lange wanted to challenge that ruling. *See State v. Wedgeworth*, 100 Wis. 2d 514, 528, 302 N.W.2d 810 (1981) ("Counsel who rely on unrecorded sidebar conferences do so at their own peril.").

¶30 In sum, Lange has failed to demonstrate that the circuit court erroneously exercised its discretion in allowing the City to submit post-trial filings after the previously set deadline.

### IV.  Lange Fails to Demonstrate That the Circuit Court's Findings of Fact Were Erroneous.

¶31 Lange argues that the circuit court's findings of fact are clearly erroneous. We will not disturb the factual findings made by the circuit court unless those are clearly erroneous. WIS. STAT. § 805.17(2); *Metropolitan Assocs.*, 379 Wis. 2d 141, ¶25. "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis.

2d 264, 714 N.W.2d 530. Under the clearly erroneous standard, "we affirm the circuit court's findings so long as there is evidence in the record that would permit a reasonable person to make the same findings, even if contrary findings could also reasonably be made based on the same evidence." *Hennessy v. Wells Fargo Bank, N.A.*, 2020 WI App 64, ¶16, 394 Wis. 2d 357, 950 N.W.2d 877, *aff'd*, 2022 WI 2, 400 Wis. 2d 50, 968 N.W.2d 684 (citing *Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12). "We do not reweigh the evidence or reassess the witnesses' credibility, but will search the record for evidence that supports findings the [circuit] court made, not for findings it could have made but did not." *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202. "The trier of fact is in a far better position than an appellate court to make this determination, because it has the opportunity to observe the witnesses and their demeanor on the witness stand." *Lessor v. Wangelin*, 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998). Additionally, when more than one reasonable inference can be drawn, we must accept the inference drawn by the trier of fact. *Bloomer Hous. Ltd. P'ship v. City of Bloomer*, 2002 WI App 252, ¶12, 257 Wis. 2d 883, 653 N.W.2d 309.

¶32　　With regard to the circuit court's determination of the before value of the property, Lange argues that the court erroneously relied on MacWilliams' opinions. Specifically, Lange asserts that MacWilliams: (1) failed to explain why the property value had not appreciated since Lange purchased the property in 2002; (2) did not rely on sales of comparable properties in determining the value of the land or the building; and (3) failed to adequately explain why he believed that the property could not be restored to C-store use after the gasoline facilities had been removed. With regard to the court's determination of the property's after value, Lange again argues that the court erroneously relied on MacWilliams' opinions. Lange contends that MacWilliams failed to explain why his opinion of

the after value was different in his 2018 appraisal of the property as compared to his 2020 appraisal of the property. Lange also asserts more generally that the court "totally disregarded Lange's entire cross[-]examination" of MacWilliams, even though the circuit court acknowledged the City's cross-examination of Herl and Landretti.

¶33 We now summarize the court's findings of fact regarding the opinions of the three expert witnesses who testified at trial.

¶34 The circuit court gave weight to MacWilliams' opinions about the property's value and the highest and best use of the property. More particularly, as to MacWilliams' opinion of the before value, the court stated that MacWilliams "selected reasonably comparable properties to the [property] and made proper adjustments to conclude a before taking value of $360,000." The court also found that MacWilliams' opinion of the highest and best use of the property, before the taking, for office or retail use was reasonable because of the "absence of market evidence that a C-store use is possible or reasonably probable and the substantial expenditure such use would require." Concerning the after value, the circuit court found that MacWilliams' opinion "properly relied upon properly adjusted land sales of redevelopment property near the [property]" in determining an after value of $71,700. The court found that the highest and best use of the property after the taking was for redevelopment as assemblage with a neighboring property, as concluded by both MacWilliams and Landretti. Finally, the court found that MacWilliams selected a "reasonable rental rate" for the temporary limited easement of $11,456.

¶35 In contrast, the circuit court did not give weight to the opinions of Lange's witnesses. The circuit court found that "Mr. Herl's ultimate opinion of

value is unreliable," explaining that Herl's analysis was based on sales of properties that were not comparable to the property. The court also found that "Mr. Herl's opinion of value in the after condition of $1 is patently unreasonable and not supported by evidence." As to Landretti's opinion of the before value, the circuit court found that Landretti failed to adjust for the differences between the property and other comparable properties. The court explained its finding that "Mr. Landretti[] made no reasonable inquiry into whether it was reasonably probable that anyone in the relevant market would actually purchase the [property] to restore the C-store use and no such evidence was presented." The circuit court stated that Landretti's opinion of the highest and best use after the taking for assemblage was reasonable, but found that Landretti's opinion of the after value was not reasonable because Landretti made "unjustifiabl[e]" assumptions and relied on properties that were not comparable to the development patterns in the area of the property.

¶36 Based on the foregoing summary of the court's findings, we conclude that Lange has failed to demonstrate that the circuit court's findings are clearly erroneous. As already explained, we defer to the court's findings regarding the credibility of witnesses and the weight of the evidence, and we will affirm the court's findings if there is evidence in the record that would permit a reasonable person to make the same findings. *Lessor*, 221 Wis. 2d at 665; *Hennessy*, 394 Wis. 2d 357, ¶16. It is clear from the court's decision that the circuit court gave weight to MacWilliams' opinions regarding the value of the property, but generally did not give weight to the opinions of Lange's witnesses.

¶37 Lange does not argue that the record lacks any basis for the circuit court's determinations of value or the facts on which the court relied. Rather, Lange's argument boils down to a contention that the court misjudged the

credibility of the witnesses and improperly weighed the evidence presented by those witnesses. There is no basis for overturning the circuit court's determinations of weight and credibility.

¶38 Lange also asserts that the circuit court's decision incorrectly stated that Herl conceded that the property's value as a C-store had decreased since Lange purchased the property. Lange points to the following statement in the court's written decision: "Mr. Herl conceded that the value of the [property] as a C-store actually decreased since the date of the [2000] appraisal." Lange argues that this finding is clearly erroneous because Herl testified that the value of the property had increased over time. Contrary to Lange's argument, however, the record illustrates that Herl indeed conceded this fact:

> [Lange]: Okay. So, actually, if you try to compare the rents that were projected in the year 2000 to the rent that was actually being collected in 2018, there is a much more substantial lowering of rent in 2018 when compared to the year 2000, correct?
>
> [Herl]: Correct.
>
> [Lange]: So doesn't that indicate that the value of this property as a convenience store actually decreased from 2000 to 2018?
>
> ….
>
> [Herl]: Yes.

Herl's ultimate opinion was that the property appreciated in value since Lange purchased the property, but the trial transcript unambiguously shows that Herl opined that the value of the of property as a C-store had dropped during that time. Thus, the court did not misstate Herl's opinion on that specific point.

# CONCLUSION

¶39     For the foregoing reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.